PRENTICE et al. v. UNITED STATES & CENTRAL AMERICAN STEAM-SHIP CO., (two cases.)[1]

(District Court, S. D. New York. November 6, 1893.)

CHARTER PARTY—GENERAL AGENT OF COMPANY—AUTHORITY TO CHARTER.

When a steamship company, having no vessels of its own, had, by authority in writing, duly constituted one W. its general agent, and he chartered two steamers by the authority of the board of directors, as he testified, but which authority was denied, and it appeared that he had previously chartered other vessels by similar charters, and the letter heads of the company expressly stated that W. was its general agent, and libelant dealt with him as such, *held*, that in such a case it was not necessary to produce record evidence of action by the board of directors, in order to bind the company; that W. had authority to make the charters; and that the company was liable to the shipowner for its refusal to accept the vessels under the charters.

In Admiralty. Libels for damages for refusal to accept chartered steamers. Decrees for libelants.

Convers & Kirlin, for libelants.

F. E. Burrows, for respondents.

BROWN, District Judge. The above two libels were filed to recover damages for the refusal of the respondents to accept the steamships Aracuna and Burnley under two charters, dated March 21, 1893. The charters were negotiated and signed by R. Williams, Jr., the general agent of the respondents. The signature was "For the United States & Central American Steamship Company, R. Williams, Jr., General Agent." Due tender of the steamers was made to the defendant company, which refused to accept them. The defense is, an alleged want of authority in Williams to execute the charters on the defendant's behalf.

The defendant was incorporated under the laws of West Virginia in 1892, for the purpose, among other things, of carrying on a maritime business in the transportation of passengers and freight between New York, Jamaica, and Central America. The company had no steamers of its own. It had entered upon its business, however, a few months before by the chartering of two other steamers before the present, both of which were chartered under instruments executed in the same manner as the charters in the present case. Williams, by due authority in writing, had been made the general agent of the company. He testifies that all the particulars of the negotiation before these charters were signed, were re-

[1] Reported by E. G. Benedict, Esq., of the New York bar.

ported from time to time to the executive committee of the board
of directors; and that when he had obtained orally the most fa-
vorable terms he could from the libelants, he was directed by the
committee of the board to execute the charters in question, and
that he then executed them accordingly. The president of the
board was the only adverse witness examined. He testifies that
no express authority of the board was given on the subject of these
charters; and that no action was taken by the board as such, though
he admitted that the matter had been spoken of with the members
individually.

It is not necessary, in cases like the present, to produce record
evidence of action by the board of directors in order to bind the
corporation. The chartering of vessels necessary to carry on the
ordinary business of the company, was not an act of such impor-
tance, solemnity, or rarity, as necessarily to require any vote of
the board of directors, or of the executive committee, where no
particular rules of the company require it; and here there is no
evidence of any such rules or by-laws. The letter heads in daily
use in the correspondence of the company, several of which are
in evidence, expressly stated Mr. Williams to be the general agent
of the company, and so held him out to the world. The libelants
dealt with him as such. Previous charters, admitted to have been
approved by the board, were executed by Mr. Williams as general
agent, precisely in the same form as the present charters. There
is no evidence that the act of chartering vessels was beyond the
scope of the powers of a general agent, such as the company held
out Mr. Williams to be. The very fact that in chartering the pre-
vious steamers the board authorized Mr. Williams to execute the
charters as "general agent" of the company in the ordinary course
of business, instead of having those charters executed under the
seal of the company, and signed by the president and secretary,
is of itself strong evidence that the execution of charters was an
act appropriate to a general agent and within the scope of his
ordinary powers, and that it was so regarded by the company.

Even, therefore, if Mr. Williams had exceeded his actual au-
thority in executing the charters in question, I doubt whether the
defense now made would have been available to the respondents.
But the weight of evidence in the present case is, that he did have
such authority. This does not rest on the testimony of the libel-
ants alone. The letter of April 6, 1893, bearing the seal of the
company, and the official signatures of both the president and the
secretary, declares expressly that "this company has under charter
the S. S. Aracuna and Burnley; it is proposed to put these steamers
on the Jamaica route, if established."

I am quite satisfied, therefore, that these charters were executed
by Mr. Williams, not merely under his lawful power as general
agent, but with the express knowledge and approval of the general
officers, and of the board of directors of the company; that all Mr.
Williams' negotiations were duly reported and known to the re-
sponsible officers of the company; and that the charters were ap-
proved by the executive committee before they were executed, and
were ratified by the board afterwards. The evidence indicates

that the subsequent refusal to accept the vessels when tendered, was only because the company then found itself in a straitened financial condition. Its refusal to accept the vessels may have been prudent; but that in no way absolved the company from its liability to make good the actual damages which the libelants have thereby sustained.

Charters of vessels have long been held to be maritime contracts; damages for the breach of such contracts are, therefore, recoverable in this court, as a court of admiralty. Ben. Adm. § 287.

Decrees in each case for the libelants, with costs; with an order of reference to ascertain the damages, if not agreed upon.