UNITED STATES v. ROESSLER & HASSLACHER CHEMICAL CO.

(Circuit Court of Appeals, Second Circuit. February 23, 1897.)

1. CUSTOMS DUTIES—CLASSIFICATION—ACETANILID.

Acetanilid, a chemical compound prepared from coal tar, not a color or dye, and principally used in the arts, in the manufacture of dyestuffs, though also used in medicine, is dutiable under paragraph 19 of the tariff act of 1890, as a preparation of coal tar, and not under paragraph 75, as a medicinal preparation, or paragraph 76, as a chemical compound, not specially provided for. 71 Fed. 957, affirmed.

2. CONSTRUCTION OF TARIFF LAWS—MEANING OF WORDS, ETC.

When words used in a tariff act have some peculiar trade meaning, congress must be assumed to have used them with the meaning they had when inserted in the act; but when a descriptive phrase is used, having no peculiar trade meaning, such as "medicinal preparations," the articles designated by such phrase will be such as from time to time come within its meaning, and not solely those meant by it at the time of the passage of the act.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This is an appeal from decision of the circuit court, Southern district of New York, reversing a decision of the board of general appraisers which affirmed the classification of certain imported merchandise for customs duties by the collector of the port of New York. 71 Fed. 957. The facts are set forth in the opinion. The importations were entered in 1893, under the McKinley tariff act of October 1, 1890.

Jas. T. Van Rensselaer, for the United States.

Albert Comstock, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The article in question is a chemical compound, known as "acetanilid." It is prepared from aniline oil, a product of coal tar, by treatment with carbolic acid, and derives its characteristics purely from coal tar, the acetic acid being merely a medium for its manufacture. It contains no alcohol. Some of the entries were classified for duty under paragraph 75, others under paragraph 76, while the importers claimed that all of their importations should have been classified under paragraph 19. These three paragraphs read as follows:

"(75) All medicinal preparations, including medicinal proprietary preparations, of which alcohol is not a component part, and not specially provided for in this act, twenty-five per centum ad valorem; calomel and other mercurial preparations, thirty-five per centum ad valorem.

"(76) Products or preparations known as alkalies, alkaloids, distilled oils, essential oils, expressed oils, rendered oils, and all combinations of the foregoing, and all chemical compounds and salts not specially provided for in this act, twenty-five per centum ad valorem."

"(19) All preparations of coal tar, not colors or dyes, not specially provided for in this act, twenty per centum ad valorem."

From the description of acentanilid above set forth, it is manifest that it is a chemical compound, and also a preparation of coal tar, while both sides concede that it is not a color or dye. It is therefore within the description of both paragraphs 76 and 19. If acetanilid be covered by the provisions of the third paragraph above quoted, this would settle the question, since manifestly the designation "all preparations of coal tar not colors or dyes" is more specific than the general descriptions "all chemical compounds" or "all chemical salts." U. S. v. Roessler & Hasslacher Co., 1 U. S. App. 305, 4 C. C. A. 1, and 56 Fed. 481; U. S. v. Matheson, 1 U. S. App. 308, 4 C. C. A. 3, and 56 Fed. 482.

The first question to be determined, then, is whether the article in question is a "medicinal preparation," within the meaning of paragraph 75; and, if that question be answered in the negative, further inquiry will be unnecessary. The board of general appraisers, in their decision as to some of the entries, found that acetanilid "is manufactured and used exclusively as a medicinal preparation"; and they refer, in both their decisions touching these importations, to an earlier decision of May 4, 1891, in which they find that "acetanilid is known as a medicinal preparation, and is, we believe, exclusively used as a medicine." None of the evidence on which these findings are based has been returned, but, when this case was in the circuit court, testimony bearing upon that point was taken. From that testimony it appears that acetanilid, at the time of importation, was very extensively used in the formation of para-nitraniline, which is a body employed extensively in the development of scarlet, crimson, and orange colors in cotton fiber. It was also formerly used very extensively in the production of what is known as flavaniline, a yellow dyestuff, which has recently been superseded by other colors possessed of more desirable characteristics. It is also used as a medicine, when reduced to a dry crystalline powder. It comes in larger and smaller crystals, and it is, of course, more convenient to obtain the powder from the smaller crystals. That the chief or predominant use of acetanilid is in the arts, and not in medicine, is quite clear upon the proof; and, under familiar principles of construction, such use is controlling of its classification. It is contended, however, that we are not to consider its chief use at the time of importation, but its chief use at and immediately prior to the date of the passage of the act. The proof shows that for a year or two prior to October, 1890, the manufacture of flavaniline had fallen off, while the manufacture of para-nitraniline had not developed to its more recent extent. There was therefore a brief period immediately prior to the passage of the act when the use of acetanilid in medicine was more extensive relatively to its use in the arts than it is to-day. When we remember the small quantities in which it is dispensed by the physician, and the comparatively large quantities in which it must be used, when used at all, by the dyer, this testimony, which is largely inferential, is not entirely satisfactory; but conceding the fact to be that, when the act was passed, the chief use of acetanilid was medicinal, that fact does not settle its dutiable status for all time. There is no question here of commercial designation. It is not disputed that the words "medicinal preparations" have,

and always have had, the same meaning in trade and commerce as in common speech. They are descriptive, and refer to substances used in medicine, and prepared for the use of the apothecary or physician, to be administered as a remedy in disease. When words used in a tariff act have some peculiar trade meaning, it must, of course, be assumed that congress used them with the meaning they had when they were inserted in the act, not with some new meaning acquired afterwards; and therefore in such cases the only competent testimony is such as tends to prove what that meaning was when congress used the words. But this principle does not apply when an article of importation is to be classified according to its use, when the question is whether it shall be included within a descriptive phrase, which differentiates what it describes from all other articles, not by a commercial or a common name or by component materials, but by the use to which the article is put. When congress provided, in October, 1890, that "medicinal preparations" should pay 25 per cent., it certainly did not mean that an article which was not then used in medicine should continue to be classified as not within this paragraph, although, two years after the act was passed, its sole use had come to be medicinal; nor that an article used solely as a medicine when the act was passed should continue within this paragraph after all such use might cease. What the paragraph does cover is all articles not otherwise specially provided for whose chief use (if not their sole one) is medicinal, and this question of use is to be determined as of the time of importation. Since we are satisfied that the chief use of acetanilid is in the arts, and not in medicine, the decision of the circuit court is affirmed. This decision, however, does not apply to the variety of acetanilid which is known as "antifebrine," and, in the form of powder, seems to be put up specially as a proprietary remedy.