ROESSLER & HASSLACHER CHEMICAL CO. v. UNITED STATES.

(Circuit Court, S. D. New York.   June 1, 1899.)

No. 2,342.

1. CUSTOMS DUTIES—CLASSIFICATION—CRUDE ARTICLES.

An article may be crude for the purposes of classification under the tariff laws, by reason of the use to which it is applied, where it is crude in the sense that it is unrefined, although it may be the result of some manufacture.

2. SAME—ZINC DUST.

Zinc dust, which is partially oxidized atoms of zinc, unrefined, and is ordinarily obtained as a by-product in the refining of zinc, and used in dyeing, is entitled to free entry, under paragraph 386 of the tariff act of 1894, as an article in a crude state used in dyeing, not specially provided for, and is not dutiable, under section 3, as a nonenumerated manufactured article, nor under paragraph 174 and section 4, as assimilated to zinc in pigs and blocks.

This is an appeal by the importers from the decision of the board of general appraisers holding certain imported merchandise to be dutiable.

Comstock & Brown, for the importers.

D. Frank Lloyd, for the United States.

TOWNSEND, District Judge.   The merchandise in question is zinc dust imported in 1894.   The collector assessed it for duty at the rate of 20 per cent. ad valorem, under section 3, Act Aug. 27, 1894, as a nonenumerated manufactured article.   The board of general appraisers, reversing the collector, held that it should have been assessed at one cent per pound, as assimilated to zinc in blocks or pigs, under paragraph 174 for zinc in blocks or pigs, and section 4, which is the similiter section of said act.   The importer appeals, and claims that the merchandise is entitled to free entry, under the provisions of paragraph 386 of said act, as an "article in a crude state, used in dyeing,   *   *   *   not specially provided for."

In the treatment of zinc ore, it is first roasted in order to desulphurize it, and the product is then mixed with finely-divided carbon, and baked in a furnace, where the contents are raised to a heat sufficient to cause them to vaporize.   The vapor then flows out into vessels, and as it cools becomes pig zinc.   A certain portion of this vapor so comes in contact with the outer air that each atom of zinc unites with the oxygen therein, and becomes a core of zinc surrounded by oxide of zinc, and in this form it is received into other vessels, called "prolongs."   Some of this material is preserved, and, after being sifted and protected from further exposure to the air, is put up and sold as zinc dust, the article in controversy in this case.   In one factory, some of the furnaces make only zinc dust; in other factories, they consider it an accidental and objectionable by-product, the larger portion of which goes back into the retorts, to be ultimately converted into pig zinc.

The whole contest in this case turns on whether this is a manufactured article or an article in a crude state.   The evidence sufficiently

proves the contention of the importer that it is an article used in dyeing not specifically provided for. It is known as indigo auxiliary, by reason of its use for dyeing purposes as a discharging agent in indigo vats. It is also used in the cyanide process of treating refractory ores, and for various other purposes, but the evidence for the United States is utterly insufficient to overcome the positive proof that its chief use is for dyeing. It is not similar to zinc, nor is it dutiable under the similiter clause, because, if it is not in a crude state, it is properly included under the head of articles manufactured wholly or in part, under section 3 of said act. Mason v. Robertson, 139 U. S. 624, 11 Sup. Ct. 668; Tiffany v. U. S., 66 Fed. 737; Robertson v. Edelhoff, 132 U. S. 614, 10 Sup. Ct. 186; U. S. v. Roessler & H. C. Co., 24 C. C. A. 604, 79 Fed. 313.

There is an irreconcilable conflict between the experts on behalf of the government and those on behalf of the importer as to whether this article is an accidental by-product, as to whether it is swept down or gathered up from the chimney flues and rafters where it is carried as a dust, and as to whether it is practically the same thing as zinc in a state of powder. But after a careful consideration of the opposing testimony, especially in view of the testimony of Dr. Baker, the government chemist, I have reached the following conclusions:

It would be impracticable to so pulverize zinc as to make a zinc powder. This has never been done commercially. It would not be identically the same thing, and it is not proved that it would accomplish the same purpose, as this zinc dust, which contains a considerable quantity of impurities, such as lead, iron, etc. As Dr. Baker states, it is crude as a metal, but not crude as a mineral. It is not "crude" in the common or dictionary sense of an article not manufactured, but it is "crude" in the sense of an article not refined. I think it is an article in a "crude" state, in the tariff sense of "crude."

It appears from an examination of said act that congress defines articles of this character as crude, not necessarily by inquiring whether they may or may not have been the result of some manufacture, but by reason of the use to which they are to be applied. Thus, in said act of 1894, the manufactured article glycerine is spoken of as crude, not purified; aluminum, as a manufactured article in crude form; and tartar, bladders, sounds, bones, camphor, coal tar, paper stock, and potash, as crude; while in section 21 provision is made for ores or metals in any crude form requiring smelting or refining to make them available, etc.

Inasmuch as all of said articles or substances have necessarily undergone some preliminary process of manufacture, and are considered crude only by referring to the purposes for which they are to be used, I think that this article may be "crude," under the tariff designation, although it is the result of a manufacture; and I am inclined to think, in opposition to the contention of the United States, inasmuch as this article is ordinarily only the accidental resultant product from the manufacture of zinc, that it is in its nature a crude by-product. That it is sifted without changing its character, and that care is taken not to expose it to the air, is not sufficient to make

it a manufacture.  U. S. v. Godwin, 91 Fed. 753;  U. S. v. Merck, 13 C. C. A. 432, 66 Fed. 251;  In re Hirzel, 53 Fed. 1007;  Prentice v. Steamship Co., 58 Fed. 702.  These conclusions are strengthened by the evident intention of congress, as gathered from an inspection of the various paragraphs of this act, to make raw materials for the dyeing industries free.  The testimony of the government chemist, who is apparently the only disinterested witness in this case, strongly supports the proof that this article is not identical in composition or in its adaptation for use with powdered zinc;  that it is "crude," in the sense that it is not refined;  that it is crude so far as its use for dyeing is concerned;  and that it is a by-product.  For the foregoing reasons the decision of the board of general appraisers is reversed.