MERCK & CO. v. UNITED STATES.

(Circuit Court, S. D. New York. January 10, 1906.]

No. 3,556.

CUSTOMS DUTIES—CLASSIFICATION—POWDERED OPIUM—DRUG.

Powdered opium, produced by grinding and sifting lump opium which has been subjected to an artificial process of evaporation, *held* to be dutiable as "opium, crude or unmanufactured," under paragraph 43, Schedule A, § 1, c. 11, Tariff Act July 24, 1897, 30 Stat. 153 [U. S. Comp. St. 1901, p. 1629], and not as a "drug," under paragraph 20, 30 Stat. 152 [U. S. Comp. St. 1901, p. 1628]. The article is "crude" in the sense that it is not refined.

On Application for Review of a Decision of the Board of United States General Appraisers.

In the decision under review the Board of General Appraisers affirmed the assessment of duty by the collector of customs at the port of New York.

Comstock & Washburn (Albert H. Washburn, of counsel), for importers.

D. Frank Lloyd, Asst. U. S. Atty.

HAZEL, District Judge. The appellants imported a large quantity of powdered opium, which they claim should have been classified under paragraph 20 of the tariff act of July 24, 1897 (30 Stat. 152, c. 11 [U. S. Comp. St. 1901, p. 1628]), as a drug advanced in value or condition by refining, grinding, or other process. The collector assessed a duty of $1 per pound under paragraph 43 of the tariff act (30 Stat. 153 [U. S. Comp. St. 1901, p. 1629]), which reads, in so far as applicable, as follows:

"Opium, crude or unmanufactured, and not adulterated, containing 9 per cent. and over of morphia, $1.00 per pound."

The controversy between the importers and the government resolved itself down to whether opium imported in a powdered condition containing more than 9 per cent. morphia is opium crude or unmanufactured. The expert witnesses for the importer testified that lump opium, to reduce the same to a powdered substance, is subjected to a process of evaporation, artificial heat of suitable temperature being employed to extract the moisture, and then the product is ground and "sifted so as to pass through 80-mesh seed." It is necessary to control the temperature or degree of heat so as to preserve the various alkaloids in the opium, and usually it requires two or three days to complete the process. There is no dispute over the proposition that an intending buyer of crude opium would probably not be satisfied with a delivery to him of powdered opium by the seller. Nevertheless, I agree with the Board of General Appraisers that in merely drying and grinding the opium it did not become a drug, within paragraph 20.

Evidence on the part of the government in this court by witnesses whose competency is not questioned, in contradiction of the expert witnesses of the importers, tended to show that for many years past opium

has been imported into the United States in the form of a natural gum, or in a dried condition; the moisture having previously been extracted. The testimony as to whether in trade and commerce such merchandise is distinctively known as powdered opium is conflicting. Mr. Mercereau, a witness for the United States, who for many years was connected with a large wholesale drug and chemist establishment, testified that the dried opium is a trifle different from Exhibit A (lump opium), in evidence, and in commercial usage he would regard Exhibit 1 (powdered opium) as crude and unmanufactured. He says that opium is ordinarily sold simply by its denominative term. There was other evidence to a similar effect. It is true, as claimed by the importers, that the various constituents of opium are useful in the preparation of medicinal compounds; but in view of the fact that the merchandise is specifically provided for in the existing act and according to the evidence of the government is usually sold by its distinctive name, the preliminary process of drying and grinding did not operate to convert its original character. As said by Judge Townsend in Roessler & Hasslacher Chem. Co. v. United States (C. C.) 94 Fed. 822:

"It is not 'crude' in the common or dictionary sense of an article not manufactured, but it is 'crude' in the sense of an article not refined. * * * Inasmuch as all of said articles or substances have necessarily undergone some preliminary process of manufacture, and are considered crude only by referring to the purposes for which they are to be used, I think that this article may be 'crude' under the tariff designation, although it is the result of a manufacture."

The language quoted aptly applies, although in the case from which the quotation is taken the manufactured article was considered by the court as a by-product.

The decision of the Board of General Appraisers is affirmed.