HAMPTON, JR., & Co. *v.* UNITED STATES (No. 1581).[1]

1. MOLYBDENITE—MINERAL SUBSTANCE—CRUDE.

Molybdenite, a mineral substance imported in its natural state as freed from the rock or gangue formation in which it is found by crushing the rock or gangue without crushing or changing the condition or formation of the mineral itself and then placing the whole in water when the mineral rises to the surface and is skimmed off, is not dutiable under paragraph 81 of the tariff act of 1913 as a mineral substance partially manufactured, but is free of duty under paragraph 549 as a mineral not advanced in value or condition, etc.—Myers *v.* United States (1 Ct. Cust. Appls., 506) distinguished.

2. PROCESS NOT MANUFACTURING PROCESS.

It has been uniformly held in customs interpretation that the application of processes necessary to produce an article from its native condition and to bring it into a condition that it may be imported, without affecting its *per se* character, is not regarded either as a manufacturing process or as a process advancing it in value or condition.

---

[1] Reported in T. D. 35926 (29 Treas. Dec., 597).

United States Court of Customs Appeals, November 19, 1915.

APPEAL from Board of United States General Appraisers, Abstract 27870.

[Reversed.]

*Walter Evans Hampton* for appellant.

*Bert Hanson,* Assistant Attorney General (*Frank P. Wilson,* special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The importation was of molybdenite. It was classified for dutiable purposes by the collector of customs at the port of New York as a mineral substance partially manufactured under the provisions of paragraph 81 of the tariff act of 1913, in pertinent part reading:

Earthy or mineral substances wholly or partially manufactured.

Free entry is claimed by the importers, who are appellants here, under paragraph 549 of said act, reading as follows:

549. Minerals, crude, or not advanced in values or condition by refining or grinding, or by other process of manufacture, not specially provided for in this section.

The method attending the production of the imported article is not questioned. The testimony adduced before the Board of General Appraisers discloses, without contradiction, that molybdenite, the imported article, is a mineral composed of the metal molybdenum and sulphur. It is a natural mineral; that is to say, as imported is in the condition as found in nature. As thus found it is in a rock or gangue formation, and is obtained by separating the molybdenite from the gangue. Separation is effected by crushing the rock and separating the molybdenite therefrom by a flotation process. The molybdenite is lighter than the rock or ore from which it is taken, and when the rock is pulverized or crushed sufficiently to free the molybdenite and the whole put in water the rock falls to the bottom while the molybdenite floats and is skimmed off. The record does not disclose that the molybdenite *per se* is by the crushing process itself crushed. On the contrary, the record discloses that only that degree of crushing and number of crushings is applied to the ore or gangue as will sufficiently pulverize the same to free all or practically all of the molybdenite. Molybdenite, as stated, is composed of the metal molybdenum and sulphur. As imported it is in its natural state as reclaimed from the earth and the gangue surrounding the same. Before it can be used it must first be roasted in order to free the sulphur therefrom and to produce the crude metal molybdenum. The crushing process does not *per se* affect the molybdenite nor change its condition or formation. In the gangue it runs from 5 per cent up to 20 per cent of the content. As imported it is absolutely useless until it is put through the necessary processes to devote it to

one of its ultimate uses. It is largely used in the production of steel and other manufacturing processes.

The Board of General Appraisers overruled the protest and the importers appeal. The board based its decision upon one of its previous cases, G. A. 7714 (T. D. 35331), and Myers v. United States (1 Ct. Cust. Appls., 506; T. D. 31531), and held that the imported article was excluded from the terms of paragraph 549 in that by the above processes it had been advanced in value or condition by re-fining or grinding. The board case concerned granito. The Myers case concerned corundum ore concentrates. Neither case is in point here. The general observations of the court in the Myers case are, however, particularly pertinent as illustrative of the difference be-tween that case and this. In that case the imported article was " a product of corundum, crushed and ground to different degrees of fineness, and divided into grades more or less uniform in size." It was held dutiable by similitude to emery, ground. In that case the imported article had been crushed fine enough to be passed through the meshes of sieves, and after being washed was graded according to size. It was a commercial article, having a distinct commercial name and ready for use in the condition as imported. It had *per se* been subjected to crushing processes, segregating processes, and grad-ing processes. In other words, manufacturing processes had been applied upon the article itself as distinguished from being applied upon the rock or gangue from which the article had been reclaimed.

The distinction here observed has been with great frequency ap-plied by this court, and not alone in the decisions of this court but in the decisions of other courts is recognized as a fixed principle of tariff construction. In United States v. Salomon (1 Ct. Cust. Appls., 246; T. D. 31277), this court held that linters, a short-fiber cotton taken from the cotton machine, which had been put through various proc-esses of cleaning and reclamation was not a manufactured article. In United States v. Michelin Tire Co. (1 Ct. Cust. Appls., 518; T. D. 31544) this court reviewed *in extenso* the authorities emphasizing this principle of decision in holding that rubber reclaimed from old scrap rubber, boots and shoes, and other articles, separated from the refuse, rivets, etc., and imported, was entitled to free entry as crude rubber fit only for remanufacture and not as a manufactured article. Thus in United States v. Continental Color & Chemical Co. (2 Ct. Cust. Appls., 165; T. D. 31679), hydroxide of chrome, which is a material reclaimed by various processes, patented and otherwise, from anthracene, was held to be an article in a crude state. So in United States v. Sheldon & Co. (2 Ct. Cust. Appls., 485; T. D. 32245) gum resin which had been produced by the application of heat to turpentine and passed off in a condensed state and separated by screens from the chips, bark, insects, and dirt accumulated from

the turpentine and then precipitated into receivers was a crude article not advanced in value or condition. In McKesson *v.* United States (113 Fed., 996) it was held that sulphide of antimony, a product of processes by which the gangue or slag and rock were removed and only the ore thus recovered imported was entitled to free entry as crude sulphide of antimony ore, as against the contention of the Government that it was a partly manufactured article. See also United States *v.* Godwin (91 Fed., 753) ; Littlejohn *v.* United States (119 Fed., 483) ; Schoenemann *v.* United States (119 Fed., 584) ; Roessler & Hasslacher Chemical Co. *v.* United States (94 Fed., 822) ; Standard Varnish Works *v.* United States (59 Fed., 456). It may be generally said that it has been uniformly held in customs interpretation that the application of processes necessary to produce an article from its native condition and to bring it into a condition that it may be imported, without affecting its *per se* character, is not regarded either as a manufacturing process or as a process advancing it in value or condition. The cited cases illustrate the principle here applied, speaking in the language of the particular decision, that processes which leave the article " sifted without changing its character," as in Roessler & Hasslacher Chemical Co. (94 Fed., 822) ; and processes which are applied for no other purpose and " had no effect upon the article itself, other than to get it by itself," as in United States *v.* Godwin (91 Fed., 753) ; and as held in Schoenemann *v.* United States (119 Fed., 584), " though adding slightly to their value," do not amount to " an advance in value or condition " in a tariff sense. Indeed, if this were not true we must hold that the condition of the article referred to as " not advanced in value or condition " is its condition in its native state, in the bowels of the earth, in the heart of the tree, or in its other original place of discovery, wherefore no article the subject of commerce could respond to that definition.

The court is of the opinion that this importation has not been subjected to any of the named processes as provided in said paragraph 549.

*Reversed.*