**No. 46420.**—Protests 24745–K of E. I. du Pont de Nemours & Co., Wilmington, Del. (Philadelphia).

KEEFE, Judge: This case involves the classification of a mineral substance known as sillimanite, imported from India. Duty was assessed thereon by the collector at Philadelphia at 30 percent ad valorem under paragraph 214, Tariff Act of 1930, as an earthy or mineral substance, wholly or partly manufactured. The plaintiffs claim that the merchandise is entitled to free entry under paragraph 1719 as "minerals, crude, or not advanced in value or condition by refining or grinding, or by other process of manufacture."

At the trial a Government sample of the imported merchandise was admitted in evidence as exhibit 1 and the importer's sample thereof as exhibit 2, and Dr. Joseph L. Gillson, a geologist and former professor at Massachusetts Institute of Technology, having wide experience with minerals in the educational and industrial field, testified that he was employed by the plaintiffs as a geologist; that as part of his duties he examined mineral deposits from which the company obtains its raw material and in such position had traveled to various parts of the world including India; that while in India for the purpose of examining certain beach sands from which his company was obtaining a black mineral known as ilmenite, he discovered the presence of substantial quantities of sillimanite in the sand; that sillimanite is a common mineral occurring in large rock formations and may be identified under the microscope because of its peculiar optical properties; that prior to his discovery of the mineral in the sands of India he had never seen sillimanite in its present form as imported; that the imported material is used for refractory purposes and that, prior to the importation of the instant material, genuine mineralogical sillimanite, as it occurs in nature, had never been used, either in the United States or abroad, as a refractory.

The witness further testified that he brought back with him a sample of the sand containing sillimanite for experimentation, a sample of which was admitted in evidence as illustrative exhibit A; that in experimenting he discovered a method of extracting the sillimanite from the other minerals with which it was mixed in the sand; and described the method substantially as follows: The sand is placed upon a so-called shaking table where the minerals contained therein are segregated according to their specific gravities; that to accomplish this the table is tilted and caused to shake more rapidly in one direction than another; that the wet sand is fed on at one corner and the shaking action causes it to move toward the far end; that a cross-current of water is introduced on the high side of the table causing the lighter minerals, of which sillimanite is one, to leave the table at the side opposite, while the heavier minerals continue toward, and are carried off at, the end of the table; that the sillimanite so obtained is still mixed with quartz; and that the quartz is segregated from the sillimanite by a flotation process; that such process is accomplished by means of a rectangular cell containing a paddle wheel revolving upon a vertical shaft; that a wet mixture of sillimanite and quartz is introduced into the cell together with a small quantity of oleic acid, which deposits a coating upon the sillimanite but not upon the quartz, and a minute quantity of cresylic acid which acts to increase the quantity of bubbles formed by the rotation of the paddle wheel; that the oleic acid bubbles rise to the surface as a froth and are brushed off by means of a paddle sweeping across the top of the cell; and that, inasmuch as these bubbles each contain a grain of sillimanite, when dried in the sun, pure sillimanite is the result. That in the processes described the use of oleic or cresylic acid might result in traces thereof being found upon some of the grains of sillimanite, but the acid would appear in microscopic amounts and would be undesirable in the use of the product as it detracts from the appearance thereof and causes the grains to stick together and in its use as a refractory the first process of preparation would be burning which would remove all traces of the acids.

The witness further testified that sillimanite is one of the hardest particles of minerals known and the action of the paddle wheel in the cell would not break the grains but that they would remain the same size as found in crude sand; that the sillimanite found in the sand had been washed down from the hills to the shore where it had been pounded by the waves for millions of years and that if any grinding had taken place it was through the natural process of disintegration; that the sillimanite here imported is the same in size and shape as that found in the crude sand upon the shores of India; and that the extraction process had not

changed its natural character, nor advanced it in value or condition and that all labor expended thereon was solely for the purpose of segregating it from the sand and not for manufacturing or refining purposes.

Counsel for the plaintiffs moved that the chemist's report with the invoice and entry papers be excluded from consideration by the court for the reason that it states that "The sample submitted is a yellowish granular powder consisting of ground mineral sillimanite," and that the foregoing statement of its condition consists of a conclusion of law which the court is called to pass upon in deciding the case. Motion to exclude the report was denied by the trial judge on circuit. We are of the opinion that the action of the court should be sustained, because the report of the chemist as to the nature of the imported material is admissible in evidence and any statements made therein as to any process of manufacture used in the production of the same will be accorded the evidentiary weight applicable when considered by the court.

From a consideration of the evidence there is no doubt that the sillimanite in question is a crude mineral substance, in its natural condition. The processes used to separate the product from sand are not regarded either as a manufacturing process or as a process advancing it in value or condition. In the case of Hampton, Jr., & Co. v. United States, 6 Ct. Cust. Appls. 392, T. D. 35926, molybdenite segregated from a rock formation by crushing and separating was held to be a crude mineral.

For the reasons stated, judgment will be entered in favor of the plaintiffs directing the collector to reliquidate the entry and make refund of all duties taken.