(C. D. 807)

RICE & CO. CORP. *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 15, 1943)

*Henry L. Ziegel* for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Robert C. O'Grady,* special attorney), for the defendant.

Before OLIVER, WALKER, and COLE, Judges

WALKER, Judge: The merchandise involved in this suit is described on the invoices as "East India Partially Tanned Cow Hides," and was assessed with duty by the collector of customs at the rate of 15 per centum ad valorem under the provision in paragraph 1530 (b) (4) of the Tariff Act of 1930 for "leather made from   *   *   *   kip skins *   *   *." The claim mainly relied upon by the plaintiff is one made by amendment to the protest to the effect that the imported merchandise is not leather but hides of cattle of the bovine species processed in some manner for preservation, but retaining their character and identity as hides, and that it is properly dutiable under the provisions of paragraph 1530 (a) of the same act, which read as follows:

Hides and skins of cattle of the bovine species (except hides and skins of the India water buffalo imported to be used in the manufacture of rawhide articles), raw or uncured, or dried, salted, or pickled, 10 per centum ad valorem.

Other alternative claims are made in the protest for duty at lower rates than that assessed, all of them based upon the condition that the merchandise be held to be leather as distinguished from hides. None of these was waived, but in view of the conclusion we have reached it becomes unnecessary to review them.

A sample of the merchandise is before us as exhibit 1. It is leatherlike in appearance, and is rather hard and stiff.

Six witnesses testified on behalf of the plaintiff, none for the defendant. Plaintiff's witnesses were the president of the corporation which was the actual importer and ultimate consignee of the merchandise at bar, a tanner for that corporation, two hide brokers, a leather buyer for a shoe company, and a leather chemist.

From the testimony of these witnesses it appears that the articles at bar were subjected to some treatment in India prior to exportation, the purpose of which was to preserve them from deterioration during the sale period and their subsequent transportation. Unfortunately, none of the witnesses was able to say with certainty what had been done to the hides in India, although witness Geilich, the president of the importing corporation, stated, on this point, as follows:

*   *   *. That hide is preserved in India for the purpose of making it commercially salable, and to allow them to ship it. It is just one of the methods of getting hides out of a hot country like India. That process started probably 100 years ago. The Englishmen were the ones who developed it, but it couldn't be taken out because they would rot if put on steamers, so the English developed this process of preservation, and by preservation, I mean they took the hair off, and just fleshed it. Those are the only operations they have done, and then

preserved it. What they use as preservatives, I don't know. They might use shell materials, and other stuff. They put the hide in pits, and stamp on it with their feet, and roll up the hide and dry it up, and that makes it readily salable and easy to ship. * * *.

All of the witnesses agreed, however, that the process did not convert the hides into leather, and it fairly appears from their testimony that the process was not one of tanning. All likewise agreed that a hide did not become leather until completely tanned, and some added the requirement that it must be ready to be used as leather.

Funk & Wagnalls New Standard Dictionary (1941) defines "leather" as follows:

> The skin or hide of an animal, or any portion of such skin when tanned, tawed, or otherwise dressed for use; * * *.

This definition is somewhat broader than that given by the witnesses, who apparently limited their definition of leather to hides which had been tanned, while the dictionary definition includes hides which have been dressed by other means. However, it is to be noted that a prime requisite under both the witnesses' and the lexicographers' definitions is the element of use. There can be no question, from a reading of the testimony, that, as imported, the hides involved were not dressed or ready for use as leather. Those of the witnesses who were qualified to speak on the point testified that a process known as "stripping down" had to be applied to the imported articles in order to bring them back to the state in which they were prior to the application of the preserving process. Whether that state was the raw or pickled state is not clear from the record, although the witness Geilich did state that such "stripping down" brought the hide "back to the equivalent of the pickled stage," from which point it was tanned "like any hide that you bought."

We conclude, therefore, that the articles in issue are not leather within the meaning of the term as used in paragraph 1530 (b), *supra*, and that the collector's classification thereunder was erroneous. The next consideration is whether they are within the provision for hides in subdivision (a) of the same paragraph, as claimed by plaintiff. We are satisfied that they are.

The testimony that the process applied in India merely preserved the hides from deteriorating during sale and shipment is uncontradicted. It clearly appears that such process could not form the basis for further processes in this country which would convert the hides into leather. Plaintiff has cited in its brief numerous cases relating to the effect of such preserving processes, the most applicable one of which we believe to be *Causse Manufacturing Co. v. United States*, 12 Treas. Dec. 122, T. D. 27513, also reported in 150 F. 419. The subject matter of that case was orange and lemon peel in brine. The

question was whether it was dutiable under a provision in the Tariff Act of 1897 for such peel "preserved," or a provision for such peel "not preserved." It appears that the peel was placed in brine for the purpose of arresting decay and permitting successful transportation. A majority of the Board of United States General Appraisers (now United States Customs Court) held (T D. 26368) that the merchandise was dutiable as "preserved," but on appeal the decision was reversed, Wheeler, J., of the United States Circuit Court, saying:

> The brine protects the peel from decay, and does not affect its properties or quality. The Board divided in opinion, setting forth the different views fully to which but little can be added. It rather seems, however, that the brine is a mere covering or packing for protection in transportation as from cold or heat, and which when separated from the peel leaves that in its natural state, as the taking off of any covering would; and that by this protection the peel is not preserved as such fruits or fruit products are within the meaning of the tariff law.

The analogy between that case and the case at bar is very close. There, as here, the preservative was a protection from deterioration, and did not affect the character of the article *per se*, leaving it in its original condition when removed and not advancing it along the line toward its ultimate use.

A very clear statement of the rule applicable in such cases is to be found in *Hampton, Jr., & Co.* v. *United States*, 6 Ct. Cust. Appls. 392, T. D. 35926, wherein, at page 395, the court, after citing numerous cases, said:

> * * *. It may be generally said that it has been uniformly held in customs interpretation that the application of processes necessary to produce an article from its native condition and to bring it into a condition that it may be imported, without affecting its *per se* character, is not regarded either as a manufacturing process or as a process advancing it in value or condition. * * *.

While it is true that the particular question there involved was whether the merchandise was "crude" as distinguished from "manufactured" or "advanced in value or condition," nevertheless we believe the rule expressed applies with equal force to a situation such as that in the case at bar, where the question is whether a process, having for its purpose and effect the preservation of hides during sale and transportation, takes them out of the category of "hides * * * raw or uncured, or dried, salted, or pickled." It appears from the evidence that the hides in question were either raw or pickled prior to the application of the preserving process, and we hold that the application of the latter did not take them out of that class of goods.

The cases cited by the defendant are not in point. In both *Lord Tanning Co.* v. *United States*, T. D. 47100. and *Morris Hess & Co.* v. *United States*, T. D. 39884, it appears that the articles involved had been tanned to the point at which they had become leather, which, as hereinbefore pointed out, is not the case here.

The protest claim made by amendment to the protest for duty at the rate of 10 per centum ad valorem under the provisions of paragraph 1530 (a) of the Tariff Act of 1930 is therefore sustained, and judgment will issue accordingly.