UNITED STATES *v.* C. J. TOWER & SONS (No. 4560)[1]

[1] C. A. D. 366.

United States Court of Customs and Patent Appeals, May 20, 1947

*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue* and *Richard E. FitzGibbon*, special attorneys, of counsel), for the United States.
*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellee.

[Oral argument April 3, 1947, by Mr. Donohue and Mr. Schwartz]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, C. D. 1024, sustaining the protest of appellee (a firm of customs brokers) against the classification by the Collector of Customs of certain merchandise, described on the invoice as "Aloxite—Crude Aluminum Oxide Abrasive–82," as a "refined bauxite" under the provisions of paragraph 6 of the Tariff Act of 1930 at one-half of 1 cent per pound. The merchandise was claimed to be free of duty under paragraph 1672 as "crude artificial abrasives, not specially provided for."

The merchandise was exported by the Canadian Carborundum Co., Ltd., Niagara Falls, Canada, to the Carborundum Co., Niagara Falls, N. Y., and the entries were made in March, May and June 1944.

The Canadian company is a totally owned subsidiary of the American company and the term "Aloxite" is the trade-name given by the Carborundum Co. to designate its aluminous abrasives. It has been so used since 1917. "Aloxite–82" is a term used to identify the involved merchandise.

The products to which the term "Aloxite" is applied are chemically the same although they may differ in physical structure.

Aloxite is made from raw bauxite and consists of about 95 or 96 per centum of alumina and 4 or 5 per centum of desired impurities comprising iron oxide, titanium oxide, silicon oxide and calcium oxide. The titanium oxide content exceeds 2 per centum, the silicon oxide is around 1 per centum and the rest of the impurities are in varying small fractions of 1 per centum.

In the production of Aloxite, the bauxite, after calcination (heating to a high temperature to drive off moisture) is mixed with a pre-determined quantity of carbon. The mixture is then heated in an arclike electric furnace to a temperature of about between 4,000° to 5,000° F. The bauxite melts and the iron, silica, some of the alumina

and some titania content react with the carbon to form a metallic iron-base alloy containing certain quantities of metallic silicons, some aluminum, titanium and small amounts of carbon and phosphorus. The alloy settles to the bottom of the furnace and the molten slag of partially purified alumina remains above the alloy. If that alumina is permitted to cool by setting, it becomes solid and is then broken into smaller rocklike masses wherein the crystals of alumina are relatively large. The product of such process is what is known as Aloxite. If it is desired to produce Aloxite containing extremely minute alumina crystals, the molten material instead of being allowed to cool, as aforesaid, is poured over a series of high pressure jets of steam or air which blow the liquid into small pill-like or globular forms sometimes called "bubbles." The latter form of Aloxite is the merchandise the classification of which is in controversy here.

The crystals in aluminous abrasives, by reason of the smelting or refining process, become cemented together by glass or what is known as a matrix which is formed principally from the titanium oxide and small amounts of iron oxide and silica without which the material would be practically useless as an abrasive and without commercial value.

For use as an abrasive the Aloxite–82 must be crushed into a fine powder and graded into four different particle sizes from which abrasive wheels, or sticks are manufactured to be employed in polishing steel bearings, gun barrels and the like to a very fine finish.

Appellee has contended that the provision of the tariff act under which it claims is a use provision and that the chief use of Aloxite prior to and including the time of enactment of the tariff act should control as to the classification of the involved merchandise even though the Aloxite herein was not commercially developed until long after the passage of the act and in support of that contention has invoked the familiar rule that if the imported Aloxite is within the class of Aloxite abrasives which on and prior to the date of the enactment of the tariff act was known as "crude artificial abrasives," the imported merchandise should be so classified.

Appellant has contended that the merchandise is a form of "refined bauxite" as that term is used in paragraph 6 and that it was properly classified as such by the collector, citing in support of its contention the case of *C. J. Tower & Sons* v. *United States*, 24 C. C. P. A. (Customs) 332, T. D. 48769.

It appears that all of the ingredients contained in the imported merchandise give it the definite predetermined characteristics of abrasives and that its chief use commercially, which began in 1942, has been that of an abrasive.

It further appears that during the late war some material such as that here involved was manufactured into refractory bricks used by

the Navy Department for lining furnaces in oil burning vessels, but that since the war there has been little or no demand for such material for that purpose.

A sales catalog of the Carborundum Co. issued in 1940 states that both "Carborundum" and "Aloxite," in addition to being superior abrasives, are important as refractory materials.

The trial court in sustaining the protest of appellee distinguished the facts of the *Tower* case, *supra*, from the facts here, stating that although the material involved there and that under consideration here, with respect to their elements, are substantially the same, the issues are quite different.

The court below upheld the claim of appellee that the expression "crude artificial abrasives" is a use provision; that the involved merchandise falls within the class of recognized crude artificial abrasives known at the time of the passage of the tariff act and that since the involved goods differ only in shape from the Aloxite known at the time of said passage, appellee's protest should be sustained, citing the cases of *United States* v. *F. W. Myers & Co., Inc.*, 24 C. C. P. A. (Customs) 464, T. D. 48913; *United States* v. *Belgam Corp. et al.*, 22 C. C. P. A. (Customs) 402, T. D. 47402; *United States* v. *C. J. Tower & Sons*, 26 C. C. P. A. (Customs) 1, T. D. 49534; *Harrison Supply Co. et al.* v. *United States*, 6 Ct. Cust. Appls. 72, T. D. 35326; and *Togasaki & Co. et al.* v. *United States*, 12 Ct. Cust. Appls. 463, T. D. 40667.

The court, after having determined that the involved merchandise is a crude abrasive and a form of Aloxite, directed its attention to the question as to whether or not Aloxite belongs to a class of crude artificial abrasives so recognized at the time of the passage of the tariff act. It noted that the term "Aloxite" had been established by uncontradicted testimony to designate such class of merchandise as early as 1917 and that the Summary of Tariff Information of 1921 supports its holding. It quoted from that part of the summary which pertains to information prepared by the United States Tariff Commission at the time the Tariff Act of 1922 was under consideration under the heading "Artificial Abrasives" at page 1120 as follows:

*Description and uses.*—Artificial abrasives are of two kinds (1) silicon carbides, sold under the trade names of carborundum, crystolon, and carbolon; and (2) aluminum oxides, sold as alundum, aloxite, exolon, and lionite. Artificial abrasives sold under other names are either the above products or are imported materials marketed under special trade names. Carbide of silicon is the best abrasive for use on cast iron, brass, bronze, and other metals of low tensile strength, and marble, granite, pearl, leather and carbon. It is also used in the form of bricks as a refractory in furnace construction. Oxide of aluminum is the best abrasive for grinding steel and wrought iron. It also has found considerable use as a refractory and filtering medium. These artificial abrasives, by far the most important abrasive materials, have replaced emery and corundum to a large extent.

It also noted the consistent recognition of Aloxite as an artificial abrasive as quoted from the "Digest of Tariff Data" prepared by the United States Tariff Commission (1938) in connection with the second trade agreement between the United States and Canada at page 16–41 as follows:

Synthetic abrasives of silicon carbide (carborundum, crystolon, carbolon, elec trolon) and of aluminum oxide (alundum, aloxite, exolon, lionite) are made in considerable tonnage at Niagara Falls, N. Y., and Worcester, Mass.; and are also either made or processed in Conniston, Ala., Blażedell and Troy, N. Y., Littleton, N. H., and Perth Amboy, N. J.

There is no dispute concerning the facts in the case but appellant contends that the conclusions drawn therefrom are erroneous and not supported by prior decisions of this court.

We are of opinion that "crude artificial abrasives" provided for in paragraph 1672 includes the involved merchandise. This view is supported by the definition of the word "abrasive" contained in Webster's New International Dictionary and quoted by the lower court as follows:

*abrasive, n.* Any substance used for abrading, as for grinding, polishing, etc. It is often made into grinding wheels with a binder, or attached to paper or cloth with glue. The principal natural abrasives are *emery, corundum, garnet, pumice, tripoli,* and *quartz sand.* The principal manufactured abrasives are *silicon carbide* and fused *aluminum oxide.* [Italics quoted.]

Funk & Wagnalls New Standard Dictionary gives the following definition:

*abrasive,* n. A substance for abrading.

It is clear that since 1917 Aloxite has been recognized as a crude artificial abrasive. The instant merchandise, as has been heretofore mentioned, is identical in all respects, so far as its composition is concerned, with the Aloxite known since 1917. The only difference between the two is that the instant merchandise is in the form of pellets, while the old known merchandise came in lumps. It is true that the crystals of Aloxite–82 are finer than those in the lump form. The smallness of the crystals seemingly gives the imported merchandise its particular quality for use as a very fine abrasive. There can be no question but that Aloxite–82 is an artificial abrasive. It is also clear from the record here that it is just as crude as the Aloxite recognized as a crude artificial abrasive since 1917. Aloxite does not exist until after the smelting or reducing operation and since it is first brought into existence at the end of that process it cannot, in our opinion, be considered anything but crude. It is not fitted for its chief use as a finished abrasive until after it has been crushed into particle forms as heretofore mentioned. If the present importation had been in commercial production prior to or at the time of the passage of the Tariff Act of 1930 it surely would have been properly classifiable as a crude artificial abrasive just as was the form of Aloxite

then so known and recognized. Clearly Aloxite–82 fits squarely into the class of crude artificial abrasives recognized as such before and at the time of the passage of the act.

We find nothing in the case of *Merck & Co.* v. *United States*, 5 Ct. Cust. Appls. 347, T. D. 34549, cited by appellant to make it applicable in support of its contention. It is there stated that

The term "crude" is not confined to something which is in a natural or raw state—something which has not been processed or prepared. "Crudeness" is a relative term, and whether an article is crude is to be determined not by the processes which brought it into being, but by the additional processes to which it is submitted after its creation in order to fit it for its chief or only use. Roessler & Hasslacher Chemical Co. (94 Fed., 822); Leber & Meyer v. United States (135 Fed., 243); * * *.

Clearly Aloxite–82 undergoes an additional process of being crushed into fine particles in order to fit it for its chief use. Therefore, it would seem that the *Merck* case, *supra*, supports the contention of appellee rather than that of appellant.

Appellant also cites the case of *Harrison Supply Co. et al.* v. *United States*, *supra*, in which certain iron shot was held to be not dutiable as "crude artificial abrasives" under the provisions of the tariff act of 1909. The product in that case was finished, graded and ready for use as an abrasive whereas the imported material here is not finished, graded or ready for its chief use as an abrasive when imported. Therefore, the difference in facts between that case and the instant case renders the holding there inappropriate to support appellant's position here.

It is vigorously urged in the brief of appellant that there would seem to be no reason to distinguish between the classification of the involved merchandise and that involved in the case of *C. J. Tower & Sons* v. *United States*, *supra*. In that case the merchandise was invoiced as "Bauxite Ore Concentrates Grade 'H' Leached, Unground." It was classified as an earthy or mineral substance at 30 per centum ad valorem under the provisions of paragraph 214 of the present tariff act and claimed to be properly classifiable as refined bauxite under paragraph 6 and assessable with duty at the rate of one-half of 1 cent per pound. The merchandise was produced by a metallurgical process in an electric furnace. The witnesses for appellant testified that the imported merchandise was aluminum oxide containing more than 99 per centum of that substance. We held the aluminum oxide or alumina to have been properly classified as claimed rather than as an earthy or mineral substance as classified. It will be observed that the issue in that case was not the same as the issue here and also that the aluminum oxide there was almost 100 per centum pure while the Aloxite–82 in this case comprises 95 to 96 per centum aluminum oxide with desired impurities in larger quantities than were present in that case. There was no contention there that the imported merchandise

was a crude artificial abrasive and we concluded under the issue that paragraph 6 was more specific than paragraph 214. Therefore, that case is not controlling in this case.

Appellant also cited the case of *United States v. C. J. Tower & Sons, supra*, and quoted copiously therefrom to support its contention that the imported merchandise is not of the same class or kind as the Aloxite used for abrasive purposes and referred to as "crude artificial abrasives" in the Summary of Tariff Information of 1921 and the "Digest of Trade Data" noted in the decision of the trial court and hereinbefore referred to.

In that case the issue involved the classification of importations of paper invoiced as "67 rolls Std. Newsprint 15″ White" which was classified under paragraph 1401 of the present tariff act as uncoated printing paper, not specially provided for, and assessed for duty at 10 per centum ad valorem and one-fourth of 1 cent per pound. It was claimed to be free of duty as "Standard newsprint paper." We stated in our opinion that the paper there involved had not been shown to be chiefly used prior to June 17, 1930, for printing newspapers in the United States, but on the contrary that such paper was sold and used for other purposes. It could not, therefore, be held to be standard newsprint paper of the class such as was known or recognized on or prior to that date. That case, therefore, may not be considered as supporting the contention of appellant.

It is not necessary to unduly prolong this opinion by a discussion of other cases cited by appellant for the reason that they are not in point in view of the facts of the present appeal.

We are of opinion, from the facts of record here and the legislative history with respect to crude artificial abrasives provided for in paragraph 1672, hereinbefore referred to, that the judgment appealed from should be affirmed. From an examination of such history it is clear to us that the Congress intended to gather into the group of crude artificial abrasives, among other things, Aloxite. The imported merchandise is Aloxite and its chief use has been shown to be as an abrasive. Even though the involved goods may come under the *eo nomine* designation of refined bauxite of paragraph 6, we think that Congress did not intend crude abrasive material, such as is the subject matter of the issue here, to be classified other than as claimed.

The judgment of the United States Customs Court is *affirmed*.