The plaintiff is entitled to the usual decree for an injunction and an account.

O. G. HEMPSTEAD & SON v. THOMAS, Collector.

(Circuit Court of Appeals, Third Circuit.  May 6, 1903.)

No. 10.

1. CUSTOMS DUTIES—CLASSIFICATION—BURDEN OF PROOF.
    The burden of showing that an import is dutiable is on the government.
2. SAME—PRESUMPTION.
    Where the classification of an import is open to a construction which would as well place it on the free list, the course most favorable to the importer must be adopted.
8. SAME—TUNGSTEN ORES.
    Tungsten ore, the primary extracted product of which is used as a mordant in dyeing cloth and for various other commercial purposes, and another to make high-grade steel, imparting thereto extreme hardness, density, weight, and durability, is free from duty, under section 614 of the tariff act of 1897 (Act July 24, 1897, c. 11, 30 Stat. 199 [U. S. Comp. St. 1901, p. 1685]); which embraces "minerals, crude," and not dutiable at 20 per cent. ad valorem, under section 183 (30 Stat. 166 [U. S. Comp. St. 1901, p. 1645]), which covers "metallic mineral substances in a crude state."

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

Wm. A. Keener and J. Stuart Tompkins, for appellant.

Wm. M. Stewart, Jr., and James B. Holland, for appellee.

Before ACHESON and DALLAS, Circuit Judges, and BUFFINGTON, District Judge.

¶ 2. See Custom Duties, vol. 15, Cent. Dig. § 13.

BUFFINGTON, District Judge. This case involves the classification under the tariff law of tungsten ores. Such ores are found in various parts of Europe, South America, and the United States. Their primary extracted product, taking the form of tungstate of soda, is used as a mordant in dyeing cloth and for various other commercial purposes. Another of their extracted products is used to make high-grade steel, and imparts thereto extreme hardness, density, weight, and durability. The proofs in this case (and in that they are confirmed by standard authorities on metallurgy and chemistry) show that the ore does not contain particles of metal, but these are obtained by chemical treatment. The powdered ore is treated with soda and some saltpeter in a reverbatory furnace. The melted material is subjected to acid, and on evaporation, crystallizes into tungstate of soda. On adding muriatic acid to the latter, tungstic acid is precipitated. By igniting tungstic acid with charcoal or in a current of hydrogen, metallic tungsten can be obtained, in the form of a powder. Tungsten iron or ferro-tungsten is made from tungsten or wolframate by roasting it, freeing it from sulphur and arsenic by treatment with muriatic acid, and strongly igniting it with charcoal in a closed crucible. This gives a sintered or scaly mass, which is fusible with iron ore. Dammer's Handbuch der Chemischer, Stuttgart (1895). "Tungsten, in the metallic state, is one of the rare elements, occurring neither in nature nor in the arts." Article "Tungsten," 2 Mineral Industry, p. 614. "In the pure metallic state the metal is considered only as a curiosity." Title "Tungsten," 3 Mineral Industry, p. 484. "Metallic tungsten is obtained by reducing." Bloxem's Chemistry, p. 397. The question here involved is whether this ore should be classified under section 614 (free list) of the tariff of 1897 (Act July 24, 1897, c. 11, 30 Stat. 199 [U. S. Comp. St. 1901, p. 1685]), which embraces "minerals, crude or not advanced in value or condition by refining or grinding, or by other process not specially provided for in this act," or under section 183, which covers "metallic mineral substances in a crude state and metals unwrought, not specially provided for in this act, twenty per cent. ad valorem." In determining that question the canon of construction is that tax laws, being in derogation of common right, must be construed strictly. Hartranft v. Wiegmann, 121 U. S. 615, 7 Sup. Ct. 1240, 30 L. Ed. 1012. The burden of showing the ore is covered by section 183 is upon the government, and, if its classification is open to a construction which would as well place it on the free list, the course most favorable to the importer must be adopted (American Co. v. Worthington, 141 U. S. 468, 12 Sup. Ct. 55, 35 L. Ed. 821), "as duties are never imposed on the citizen upon vague or doubtful interpretations" (Hartranft v. Wiegmann, supra). In Marvell v. Merrill, 116 U. S. 11, 6 Sup. Ct. 207, 29 L. Ed. 550, the court, in construing a prior tariff law, accepted Webster's definition of a mineral as "any inorganic species having a definite chemical composition," and an ore as "the compound of a metal and some other substance, as oxygen, sulphur, or arsenic, called its mineralizer, by which its properties are disguised or lost." Presumably with this decision in view, when Congress subsequently placed "minerals, crude," under section 614, it used a term of ascer-

tained scope in tariff legislation. Now it is clear that tungsten ore is embraced and described under the terms "minerals, crude, or not advanced in value or condition by refining or grinding, or by other process not specially provided for in this act." It is inorganic. It has, as we have seen, a definite chemical composition. Its properties as a metal are disguised and lost in its mineralizer compound. Obviously, therefore, it falls within the broad generic term "minerals, crude," etc., of section 614. Indeed, it was admitted of record by the government "that the article in question is a mineral substance." If, therefore, it is not specifically described elsewhere in the law, it is covered by this section; and, being thus descriptively enumerated therein, the burden is upon the government to show conclusively it should be taxed under section 183 as a "metallic mineral substance." It is a familiar principle that where articles have a well-known, popular meaning, such meaning, rather than technical, scientific terms, will be adopted in the construction of tariff laws. Lutz v. Magone, 153 U. S. 107, 14 Sup. Ct. 777, 38 L. Ed. 651; American Co. v. Worthington, supra; Two Hundred Chests of Tea, 9 Wheat. 430, 6 L. Ed. 128. If, therefore, the term "metallic mineral substance" has any common, well-recognized commercial or trade meaning, it should be adopted. But the proofs disclose none. Now, as said in Robertson v. Salomón, 130 U. S. 415, 9 Sup. Ct. 560, 32 L. Ed. 995, "if the commercial designation fails to give an article its proper place in the classification of the law, then resort must necessarily be had to the common designation"; and for that common designation we must seek the dictionaries, which are evidences of common understanding. Marvell v. Merrill, supra; Nix v. Hedden, 149 U. S. 304, 13 Sup. Ct. 881, 37 L. Ed. 745. The Standard Dictionary defines "metallic" as "being, containing, or having characteristics of a metal; as a metallic mineral." Admittedly, there are certain mineral substances wherein metal is found—gold, silver, copper; and a number of other metallic minerals were instanced by counsel at the argument. But whether the number is large or small, sure it is that Congress has seen fit in this section to specify, not "mineral substances" generally, but a particular kind thereof, to wit, "metallic mineral substances," as subject to this 20 per cent. duty. Does tungsten ore answer this definition, as "being a metal"? As we have seen, no metal, as such, is found in it. It is not a metal, but an oxide, and the tungsten is mineralized. Tungsten metal is not found in it. It is two degrees or processes removed from metal. Its change thereto is not by grinding process, but by chemical effects on its particles. The proof is that "it undergoes a chemical process to decompose it." The process "is absolute transformation." "You change its character absolutely." It is "an expensive and intricate process." It is "brought from its oxide condition into a metallic condition by a process before it becomes a metal." In the case of ferro-tungsten, where it is compounded with iron, it first displays metallic characteristics; tungsten ore is first changed to tungstate of soda, then into tungstic acid, and then alloyed with iron to produce tungsten metal; and it should be noted that the proofs show such ferro-tungsten is classified and assessed under section 183 as "metals unwrought." The proofs show—

and there is none to the contrary—that tungsten ore has none of the characteristics of metal. It has neither elasticity, ductility, malleability, resonance, nor luster. In the Century Dictionary it is said the term "metallic" is used to indicate the condition of a metal in which it exists by itself, and is not mineralized or combined with those substances which take away its metallic character and convert it into an ore—characteristics the very opposite of tungsten ore. It will be noted, also, that the government, in its official publications, has adopted this definition of "metallic" and "nonmetallic" as applied to and descriptive of minerals. In the geological surveys of 1899 and of 1901 in evidence, manganese and chromic iron ores are listed as nonmetallic. Yet ferro-chrome and ferro-manganese, which are used for the same purpose as ferro-tungsten, viz., as a steel hardener, are obtained by direct process from the ore, while, as we have seen, it takes two intermediate processes before tungsten is alloyed with iron to form ferro-tungsten.

Finding, therefore, as we do, that tungsten ore is aptly described by the term "minerals, crude," of section 614, and that it does not answer the description "metallic mineral substances in a crude state," used in section 183, the decree of the court below is reversed, with direction to enter one in favor of the appellant.