### KUTTROFF, PICKHARDT & CO. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit.    April 13, 1909.)

#### No. 154 (5,024).

CUSTOMS DUTIES (§ 38*)—FREE LIST—CHROME ALUM—"CRUDE STATE."

The provision for articles in a "crude state," in Tariff Act July 24, 1897, c. 11, § 2, Free List, par. 482, 30 Stat. 195 (U. S. Comp. St. 1901, p. 1680), does not include chrome alum, which is removed from its crude state of a paste by a crystallizing process, in which it is freed from incidental impurities.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 38.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decision of the Circuit Court, affirming a decision of the Board of General Appraisers (G. A. 6,647, T. D. 28,346), which affirmed the collector at the port of New York. The importation is commercially known as "chrome alum," and was classified under Act July 24, 1897, c. 11, § 1, Schedule A, par. 3, 30 Stat. 151 (U. S. Comp. St. 1901, p. 1627), as a "chemical salt." It is concededly a chemical salt; but the importers contend that it is entitled to free entry under paragraph 482:

"Articles in a crude state, used in dyeing or tanning, not specially provided for."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The opinion filed in the Circuit Court reads as follows:

HAZEL, District Judge. The Board of Appraisers in this case affirmed the decision of the collector, who assessed the merchandise herein as a chemical salt dutiable at 25 per centum ad valorem under paragraph 3 of the act of 1897. The chief question involved herein is whether the merchandise, described as chrome alum, in its imported state was crude within the meaning of law. The witnesses agree that when the importation was received in this country it was in the crudest form known to commerce. It is sold to tanners, dyers, and manufacturers of mordants for dyers. The Board of General Appraisers gave careful consideration to the question submitted, and reached the conclusion that to crystallize the article—that is, to make it commercially salable—it required refining or purifying by chemical process and treatment, and on account thereof it was held not to be in a crude state. The importers, however, contend that under the doctrine of United States v. Merck, 66 Fed. 251, 13 C. C. A. 432. United States v. Godwin (C. C.) 91 Fed. 753, and Roessler & Hasslacher Chemical Co. v. United States (C. C.) 94 Fed. 822, the merchandise was in fact in a crude condition, entitling it to free entry under paragraph 482 of the tariff act of 1897, which reads: "Articles in a crude state used in dyeing and tanning not specially provided for in this act."

The contention is without merit. In the Merck Case the court had before it a drug known as "elaterium," which the government contended was a medicinal preparation, but the court was of opinion that it was a drug in its crudest form. The evidence showed that to put the juice of the fruit from which the drug was produced in the condition of importation simply required its subjection to a process of evaporation and drying, which, however, did not advance the article from its crude state. In the Godwin Case, Judge Wheeler held that to dry the powder of the pawpaw melon in the sun and sift the same to remove deleterious substances was not a process of refining or of manufacture, and the article retained its crude condition. In the Roessler Case the controversy related to zinc dust, and, in the judgment of the court, partially oxidized atoms of zinc, which is obtained as a by-product in the refining of zinc, was an article in a crude state. These cases are not precedents for such a determination in the case at bar, in view of the fact, which is clearly established by the evidence, that chrome alum, the by-product obtained from oxidizing anthracene, after reduction, contains impurities which necessitate careful and extensive refining to render it commercially salable, and hence can hardly be said not to have been materially advanced in manufacture. As stated in the opinion of the board: "The evidence conclusively shows that the article (when imported) is refined, is prepared by artificial process, and is in a complete form needing no other preparation for its use."

Moreover, it is held that, when an article has been assessed at a rate of duty which is acquiesced in for a long period of time, such classification is entitled to consideration. The undisputed evidence shows that the merchandise of the character under consideration as a rule has without protest been returned for duty as a chemical salt. This rule is not inaptly invoked here. Hills Bros. Co. v. United States (C. C.) 143 Fed. 695, affirmed (Dec. 4, 1906) 151 Fed. 476, 81 C. C. A. 14.

The decision of the Board of General Appraisers is affirmed.

Curie, Smith & Maxwell (W. Wickham Smith, of counsel), for appellants.

J. Osgood Nichols, Asst. U. S. Atty.

Before LACOMBE, COXE, and WARD, Circuit Judges.

PER CURIAM. The only question in the case is whether the article is "in a crude state." It is derived as a by-product of the process of manufacturing certain coal-tar colors. In such process chromium sulphate and potassium sulphate are formed, and these two products, combined with water, constitute chrome alum; but, as the evidence shows, it remains at the close of the process "as a grayish, greenish

paste." This seems to be its crude state; but the paste is thereafter treated with sulphuric acid, and from the solution the chrome alum of importation crystallizes out, being thereby freed from incidental impurities. We concur with the board and the Circuit Court that chrome alum thus crystallized is not in a crude state.

Decision affirmed.