## UNITED STATES *v.* VON OEFELE (No. 1042).[1]

EARTH NOT A MEDICINAL PREPARATION.

Volcanic earth dried and ground in a mill and used for external application to the human body is not a medicinal preparation for the use of the apothecary or physician as a remedy for disease. United States *v.* Roessler & Hasslacher Chemical Co. (79 Fed., 313). The dry pulverized earth here is used as a mud bath and can not be deemed a plaster, healing or curative. It is dutiable, according to the protest, as an earth, wrought or manufactured, under paragraph 90, tariff act of 1909.

## United States Court of Customs Appeals, February 12, 1913.

APPEAL from Board of United States General Appraisers, Abstract 29825 (T. D. 32830).

[Reversed.]

*William L. Wemple*, Assistant Attorney General (*Leland N. Wood*, assistant attorney, of counsel; *William A. Robertson*, special attorney, on the brief), for the United States.
*Walden & Webster* (*Henry J. Webster* of counsel) for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court.

There is no claim here that the merchandise under consideration is not correctly described by the importer and the Government chemist, both of whom were witnesses before the Board of General Appraisers.

The importer testified in substance that it came from Germany; that it was volcanic earth, dug out of the ground; that before being dug it was sandy, clammy, sticky earth, covered by earth above it; that when taken out and laid in the air it became dry; that it was then put through a grinding mill, and in the resulting condition, with nothing added thereto, was imported; that in such condition it contained silica and was a compound of silica; was earth.

The Government chemist did not make a quantitative analysis of a sample of the merchandise, but did make a qualitative analysis thereof, which was the one regularly prescribed for ores or minerals. He testified that his analysis showed it to consist of powdered silica, with traces of alumina, iron, and lime; that silica was an oxide of silicon; that silicon was an element; that the entire substance would be correctly described as earth, and that most earth was composed largely of silica.

In its physical appearance the sample before us resembles pulverized earth of a darkish color.

As to its use and the results thereby obtained, the importer's evidence furnishes the only information in the record. He testified that it is mixed with partly warm water, which makes a batter or

mud, in which form it is, while warm, applied externally like a plaster to the human body; that it is good for "old scars, or where you have pain; scars and pains"; that so used it helped make people well, really made them better; that it was a mud bath.

The appraiser returned the merchandise for duty as an article composed of mineral substances at 35 per cent ad valorem under paragraph 95 of the tariff act of 1909. Whereupon the importer protested, claiming it to be free of duty under paragraphs 683, 626, or 608, or dutiable at $1 or $2 per ton under paragraph 90. The protest also contained the alternative claims that the merchandise was dutiable under paragraphs 480 or 481. The appraiser, in answering the protest, reported the merchandise to be powdered silica, identical with the merchandise the subject of a decision of the Board of General Appraisers in Abstract 26123 (T. D. 31757), from which it appears that importation was held by the board to be dutiable as a nonenumerated manufactured article under paragraph 480 of the act of 1909.

Upon the coming in of the protest the collector, in referring the same to the Board of General Appraisers, in substance said that as the protest appeared to be partly valid his office stood ready to reliquidate if authorized by the board.

The Board of General Appraisers, after hearing the evidence, found the merchandise to be identical with that in the Treasury decision above mentioned and, on the authority thereof, sustained the protest, and directed reliquidation under paragraph 480, as a nonenumerated manufactured article.

The Government thereupon appealed to this court.

At the hearing before the board, the importer withdrew all claims in his protest except those claiming $2 a ton as wrought or manufactured earth under paragraph 90, and 20 per cent ad valorem as a nonenumerated manufactured article under paragraph 480.

Now, upon the hearing of the case in this court, the Government concedes that the collector's assessment was incorrect, but contends that the merchandise is dutiable as a medicinal preparation under paragraph 65 of the act of 1909, the material part of which is here quoted:

65. * * * All other medicinal preparations not specially provided for in this section, twenty-five per centum ad valorem: * * *.

and invokes the well-settled principle that the importer in his protest must point out and by his evidence show, not only that the collector's action was wrong but also that a claim set up in his protest is right.

The Government further claims that, in any event, if the merchandise is not found to be a medicinal preparation and dutiable

under paragraph 65, it is a healing or curative plaster under paragraph 66, which we here insert:

66. Plasters, healing or curative, of all kinds, and court-plaster, twenty-five per centum ad valorem.

and is therefore an enumerated article, not dutiable under paragraph 480, and therefore prays that the decision of the Board of General Appraisers be reversed and the assessment of the collector affirmed.

The importer in this court rests his case upon the contention that the merchandise should be assessed at $2 per ton as an earth, wrought or manufactured, under paragraph 90, which, as already appears, was one of the claims made in his protest. The material part of this paragraph is as follows:

90. Clays or earths, * * * wrought or manufactured, * * * not specially provided for in this section, two dollars per ton. * * *

It is apparent therefore that the real question here is, under which, if either, of paragraphs 65, 66, or 90 the importation should be classified?

Naturally we are brought to the consideration of the term "medicinal preparations," as used in paragraph 65. Do these words describe this merchandise? In United States *v.* Roessler & Hasslacher Chemical Co. (79 Fed., 313) the Circuit Court of Appeals, Second Circuit said:

It is not disputed that the words "medicinal preparations" have, and always have had, the same meaning in trade and commerce as in common speech. They are descriptive, and refer to substances used in medicine, and prepared for the use of the apothecary or physician, to be administered as a remedy in disease.

This definition of the term was included in the case certified to the Supreme Court, Fink *v.* United States (170 U. S., 584), but the Supreme Court did not, in disposing of the certified question have occasion to consider its correctness, evidently for the purposes of that case assuming the same.

We have been referred to some, and there are a great many, cases in which it has been said that this or that article was dutiable as a "medicinal preparation," but it has not often been therein attempted to define the ordinary meaning of that term. In these cases, it has often been agreed that the merchandise under consideration was in fact a medicinal preparation, and, if the fact was controverted, it has usually appeared that the importation, either in itself or in the compounded or other form in which it was presented in the particular case, was possessed of antiseptic or therapeutic qualities.

Earth like this does not appear to have been so adjudged.

Lexicographers define "silica" as, "a white or colorless, extremely hard, crystalline silicon dioxid, found pure, as quartz, tridymite, or

opal, in many rocks and sands," and as already appears the chemist in this case testified that most earth is composed largely of silica and that this importation would be correctly described as earth.

It is common knowledge that a great many articles of every day use, but which are never suspected of being, and are not in fact, medicinal preparations, are, when warm or hot, applied externally to the human body for the purpose of alleviating pain, and that the relief in such cases comes from the heat applied and exclusion of air thereby accomplished, and not from any medicinal properties in the articles so employed. This earth, which is used as a sort of mud bath, we think, is of that class, and is not a medicinal preparation within the meaning of that term as used in the paragraph.

We are not unmindful that upon cross-examination by the Government's attorney, the importer was asked the following question:

Has it any medicinal properties in it—does it help to make people well if you put it on their body?

To which he answered:

Yes; in this place there are over 20,000 applications in one bathing place.

But in view of what has already been suggested, we do not think upon the whole record it can seriously be claimed that this earth is a medicinal preparation, and it surely is not a substance "used in medicine and prepared for the use of the apothecary or physician to be administered as a remedy in disease."

Neither do we think it is fairly within the scope of paragraph 66, as claimed by the Government, a plaster, healing or curative. It was not when imported a plaster in the ordinary meaning of that term; it was simply dry, finely pulverized earth.

The importer here concedes that it is dutiable as an earth, wrought or manufactured, under paragraph 90. It is an earth and has been subjected to a grinding process, which we think fairly brings it within the language of that paragraph.

The importer having made this claim in his protest, and it being now conceded by the Government that the collector's classification was erroneous and, also, in effect that the judgment of the Board of General Appraisers was not well founded, it remains for this court to order reliquidation upon the basis of the valid claim made in the protest, as was done in United States v. Strauss (3 Ct. Cust. Appls., 180; T. D. 32464), and United States v. Strauss (3 Ct. Cust. Appls., 325; T. D. 32621).

It is, therefore, ordered that the judgment of the Board of General Appraisers be *reversed*, and the cause remanded, with directions that reliquidation be had at the rate of $2 per ton under paragraph 90 of the act of 1909, in accordance with the views herein set forth.