(C. D. 856)

REICHARD COULSTON, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 14, 1944)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*William J. Vitale* and *Harold L. Grossman,* special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: The merchandise in this case is invoiced as "powdered red oxide of iron (synthetic) (calcined bauxite residue)" and entered under paragraph 73, act of 1930, as iron oxide and iron-hydroxide pigments, not specially provided for, at 20 per centum ad valorem. The collector assessed duty thereon at 30 per centum ad valorem under paragraph 214 as earthy or mineral substances. The plaintiff claims that the merchandise is in fact a bauxite residue which was manipulated after it became a residue, and that it is free of duty under paragraph 1664, or, if dutiable, it is dutiable at 10 per centum ad valorem under paragraph 1555, or at 10 or 20 per centum ad valorem under paragraph 1558. By way of amendment it is further claimed that the merchandise is a clay or earth not specially provided for and, as such, dutiable under paragraph 207 at $1 per ton or $2 per ton.

The provisions of the Tariff Act of 1930 in question read as follows:

### TITLE I—DUTIABLE LIST

PAR. 214. Earthy or mineral substances wholly or partly manufactured and articles, wares, and materials (crude or advanced in condition), composed wholly or in chief value of earthy or mineral substances, not specially provided for, whether susceptible of decoration or not, if not decorated in any manner, 30 per centum ad valorem; if decorated, 40 per centum ad valorem.

PAR. 207. Clays or earths, * * * wrought or manufactured, not specially provided for, $2 per ton; * * *.

PAR. 1555. Waste, not specially provided for, 10 per centum ad valorem.

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

### TITLE II—FREE LIST

PAR. 1664. Metallic mineral substances in a crude state, such as drosses, skimmings, residues, brass foundry ash, and flue dust, not specially provided for.

It was agreed between counsel as follows:

That in the production of aluminum, bauxite is treated for the purpose of separating therefrom its alumina content. When the separation of the alumina content has been completed there is left a residue, which is in the form of sludge.

The sludge is then washed and calcined. The calcination drives off the moisture and leaves the treated sludge in the condition similar to this sample, which we ask to have marked illustrative exhibit A.

\* \* \* \* \* \* \*

That after the treated sludge has reached the stage of illustrative exhibit A it is crushed or ground, after which it is in the form of this article we now produce and ask to be marked illustrative exhibit B.

\* \* \* \* \* \* \*

That illustrative exhibit B resembles the merchandise under protest in all material respects.

We further agree that the imported merchandise is used as a filler in the manufacture of paper board, and that it would be fit for use as a pigment only after it has been further processed (Record pages 3 and 4).

A chemist employed by the plaintiff testified that illustrative exhibit B is sold to "paper people." However illustrative exhibit A, which is exactly the same as illustrative exhibit B except for fineness, is crushed for pigment purposes to a fineness that will pass through a 325 mesh. And the important element is the "staining power" provided by the 56 per centum of iron oxide in the imported material, as his firm produces principally iron oxide colors.

The witness was of the opinion that the imported material was an earth containing oxides of a number of elements, the principal oxide being that of iron. He was further of the opinion that bauxite was a clay as it possessed the chemical characteristics of a clay inasmuch as it contained large amounts of alumina.

A chemist at the customs laboratory at New York testified for the Government that he had analyzed the merchandise and had classed it as a mineral substance because bauxite is classed as a mineral. In analyzing the merchandise he found it consisted of volatile matter, silica, and various oxides, to wit, silica, alumina, titanium, iron, and a small amount of lime, also sodium, a trace of magnesia, and a small amount of sulphur trioxide, but failed to find any metallic minerals as such, and that the product had no metallic content.

The witness further testified that bauxite is a crude mineral but illustrative exhibit B, the imported merchandise, is not in the same condition as bauxite, which, although not containing aluminum, contains oxide of aluminum. However, according to the witness, the aluminum in bauxite is an aluminum oxide and is not combined with silica as in clay to form an aluminum silicate, an earthy substance.

The chief chemist of the customs laboratory at New York testified that the imported material is obtained by heating bauxite, which is a mineral, with sodium carbonate, which forms sodium aluminate and sodium ferrite. The sodium aluminate so formed is soluble in water while the sodium ferrite decomposes into ferric oxide and ferric hydroxide. After the alumina is extracted the remainder is in the form of a moist sludge. This is calcinated; that is to say, heated, to decompose the ferric hydroxide into ferric oxide, and, after so heating, it is disintegrated and crushed into the form as here imported. This product represents the iron oxide portion of the bauxite together with a few other impurities.

In the opinion of the witness a metallic mineral substance would contain a free metal and the product in question has no such content, the metals being combined with an oxygen to form an oxide. The

witness was further of the opinion that bauxite from which alumina is extracted is not a metallic mineral substance because the metal is in combination and not free. In order to obtain the alumina, the oxygen has to be extracted from the aluminum oxide. In other words the mineral has to be reduced to a metal. And wherever bauxite occurs in various parts of the earth, it is a combination of aluminum and oxygen and hydrogen in definite proportions of each of the elements, and, being in such definite proportions, is a mineral substance. In other words, bauxite will always be a hydrated oxide of alumina, and whatever other materials are found therein depends upon where it is mined, as it always contains certain impurities. While minerals, according to the witness, are combinations of elements in definite chemical combinations and usually with definite crystalline structure, earthy substances consist of mixtures of various minerals in no definite proportions.

Plaintiff relies principally upon the claim that the merchandise is free under paragraph 1664, as metallic mineral substances or, if dutiable, as clays or earths, wrought or manufactured under paragraph 207.

As to the claim that the merchandise is free as a metallic mineral substance, it is argued that the court should reconsider its decision in the case of *Alpha Lux Co., Inc.* v. *United States*, 2 Cust. Ct. 6, C. D. 75, affirmed in *Alpha Lux Co., Inc.* v. *United States*, 27 C. C. P. A. 162, C. A. D. 79, because in that case, this and the appellate court, in holding that free entry under paragraph 1664 was limited to such merchandise in which metal was present as metal, overlooked the fact that Congress in providing for specific metallic mineral substances such as are named in paragraph 1664 included therein "flue dust" which was held not to be a metallic mineral substance in *American Smelting & Refining Co.* v. *United States*, 12 Ct. Cust. Appls. 212, T. D. 40226, and in *American Smelting & Refining Co.* v. *United States*, 16 Ct. Cust. Appls. 46, T. D. 42718, where the court in each case cited and followed the principle as announced in *Hempstead* v. *United States*, 122 Fed. 538. The plaintiff stressed the point that the words "such as" followed by descriptive terms, when used in a paragraph, limit the paragraph to such articles as are so named, citing *Frankfeld & Co.* v. *United States*, 7 Ct. Cust. Appls. 296, T. D. 36805, and *United States* v. *Seward*, 9 Ct. Cust. Appls. 18, T. D. 37845.

It is further argued that in paragraph 302 (c), where provision is made for "tungsten ore or concentrates, 50 cents per pound on the metallic tungsten contained therein," Congress did not use the word "metallic" in the sense that the court has held it to be used in paragraph 1664, as tungsten ores never contain tungsten in the form of a metal, and if construed in the light of the *Alpha Lux* case, *supra*, the conclusion would follow that the provision in paragraph 302 (c) covers

nothing, a conclusion which under the law the courts may not draw. It was held in the *O. G. Hempstead & Son* case, G. A. 5400, T. D. 24607, that tungsten ore as found in nature contains no particles of metal.

In conformity with the foregoing arguments the plaintiff concludes that the court:

ran counter to this doctrine in that it determined the meaning of "metallic mineral substances" *without regard to the enumerated articles*, which construction would have the effect, if logically applied, of eliminating one of the enumerated things, namely, flue dust, because this commodity is not metallic as the court defined that word. The true construction as called for by the prior cases is that only such metallic mineral substances as are like the enumerated things are free of duty. Inasmuch as some of the enumerated things contain metal as such and some do not, the term "metallic mineral substances" must be construed as covering both classes.

As to the claim that the merchandise is dutiable as an earth, the plaintiff argued that the crude bauxite from which aluminum is produced is a clay according to statements of the appellate court in the *Alpha Lux* case, *supra*; that crude bauxite when processed to produce aluminum has changed its character so that the residue now before the court no longer has the plasticity characteristic of clay, but that it is an earth, as clay is a specific kind of earth, and an inspection of the exhibit in evidence, when considered in connection with its origin, establishes that it is an earth, and much like the merchandise before the Board of General Appraisers in G. A. 1413, T. D. 12817, where merchandise described as oxide of iron, silica, alumina, and lime was held to be an earth, wrought or manufactured. In contending that the merchandise was an earth the plaintiff also relied upon the case of *United States* v. *Von Oefele*, 4 Ct. Cust. Appls. 15, T. D. 33200, where a volcanic earth, dried and ground in a mill and used as a mud bath, was held to be an earth, wrought or manufactured, rather than a medicinal preparation.

The Government contends that iron oxide is simply rust and not iron; that iron is not metallic in its natural state, becoming metal only after processing; that bauxite is not a metallic mineral substance but is a mineral containing chemical elements which must be processed to obtain a metal, consequently bauxite is a mineral containing chemical elements, rather than a metallic mineral substance. As to the contention of the plaintiff that this court should reverse the *Alpha Lux* case, *supra*, the Government states that it is "an untenable conclusion, arbitrarily arrived at by the plaintiff without any evidence whatsoever to sustain its factual background or to support its legal conclusions." Upon the other hand it is contended that there are many kinds of flue dust that are metallic in the sense that they contain metal as such, citing "The Metallurgy of Lead," by Hofman. At page 380 of said authority it is stated:

The character and consequent value of flue dust changes greatly according to the part of the flue in which it is collected. Near the blast furnace it will resemble

very much the ore that was charged, further on it will grow richer in lead and lower in silver until all ore particles have been settled out and only fume remains suspended in the gas current. This will be very rich in lead and very poor in silver * * *. In the second instance, the dust behind the blast furnace assayed 35% lead and 31 ounces silver per ton; in the main dust chamber, 41% lead and 26 ounces silver per ton; and at the foot of the stack, 52% lead and 17 ounces silver per ton.

Respecting plaintiff's claim that the residue in question is a clay or earth, the Government contends that the plaintiff has failed to affirmatively sustain the same.

We are of the opinion that the residue here in question is not such as would be classifiable as a metallic mineral substance. A metallic mineral substance was defined by our appellate court in *United States* v. *Wells, Fargo & Co.*, 1 Ct. Cust. Appls. 158, T. D. 31211, as follows:

* * *. Metallic mineral substances consist of a metal combined with some foreign or other substance. Metals unwrought consist of a pure metal, * * *.
* * * the merchandise was not in its crude state, but was a crude metal reduced from its crude state and separated from the accompanying substances surrounding it in that state by elaborate processes. It is not, therefore, a metallic mineral substance in a crude state within purview of paragraph 183.

Also in the case of *Hempstead* v. *Thomas*, 122 Fed. 538, the court had before it the question whether or not tungsten ores were embraced within the meaning of "metallic mineral substances in a crude state and metals unwrought, not specially provided for." In respect to metallic mineral substances the court stated:

It is a familiar principle that where articles have a well-known, popular meaning, such meaning, rather than technical, scientific terms, will be adopted in the contruction of tariff laws, *Lutz* v. *Magone*, 153 U. S. 107, * * *. If, therefore, the term "metallic mineral substance" has any common, well-recognized commercial or trade meaning, it should be adopted. But the proofs disclose none. Now, as said in *Robertson* v. *Salomon*, 130 U. S. 415 * * *, "If the commercial designation fails to give an article its proper place in the classification of the law, then resort must necessarily be had to the common designation"; and for that common designation we must seek the dictionaries, which are evidences of common understanding. * * * *Nix* v. *Hedden*, 149 U. S. 304, * * *. The Standard Dictionary defines "metallic" as "being, containing, or having characteristics of a metal; as a metallic mineral." Admittedly, there are certain mineral substances wherein metal is found—gold, silver, copper; and a number of other metallic minerals were instanced by counsel at the argument. But whether the number is large or small, sure it is that Congress has seen fit in this section to specify, not "mineral substances" generally, but a particular kind thereof, to wit, "metallic mineral substances," as subject to this 20 per centum duty. Does tungsten ore answer this definition, as "being a metal"? As we have seen, no metal, as such, is found in it. It is not a metal, but an oxide, and the tungsten is mineralized. Tungsten metal is not found in it. It is two degrees or processes removed from metal. Its change thereto is not by grinding process, but by chemical effects on its particles. The proof is that "it undergoes a chemical process to decompose it." The process "is absolute transformation." "You change its character absolutely." It is "an expensive and intricate process."

It is "brought from its oxide condition into a metallic condition by a process before it becomes a metal." In the case of ferrotungsten, where it is compounded with iron, it first displays metallic characteristics; tungsten ore is first changed to tungstate of soda, then into tungstic acid, and then alloyed with iron to produce tungsten metal; and it should be noted that the proofs show such ferrotungsten is classified as assessed under section 183 as "metals unwrought." The proofs show—and there is none to the contrary—that tungsten ore has none of the characteristics of metal. It has neither elasticity, ductility, malleability, resonance, nor luster. In the Century Dictionary [page 3731] it is said the term "metallic" is used to indicate the condition of a metal in which it exists by itself, and is not mineralized or combined with those substances which take away its metallic character and convert it into an ore—characteristics the very opposite of tungsten ore. * * *.

Finding, therefore, as we do, that tungsten ore is aptly described by the term "minerals, crude," of section 614, and that it does not answer the description "metallic mineral substances in a crude state," used in section 183, the decree of the court below is reversed. * * *.

As far as we have been able to observe the tariff term "metallic mineral substances" has consistently been construed as including such articles as contain metal as an element.

As to plaintiff's contention that Congress did not use the word "metallic" in paragraph 302 (c) in the sense construed by the courts, we find that in "Tariff Information Surveys" vol. 3, the Tariff Commission states that:

3. *Compensatory duties.*—As long as tungsten-bearing ores are admitted free of duty no question arises with reference to compensatory duties in the manufacture of the alloy or metal. Duties, however, on tungsten-bearing ores are proposed in bills recently presented to Congress. In the manufacture of ferro-tungsten some metallic tungsten is lost. A rough estimate of average recovery is 85 per cent of the metal in the concentrate. This recovery should be a basis for levying duties on ferro-tungsten and tungsten metal in case ore is made dutiable * * * (pages 121–122).

Duty was first placed upon tungsten ore in the Tariff Act of 1922 and the rate was based upon the quantity of metallic tungsten to be obtained therefrom as was the duty thereon under the Tariff Act of 1930. The foregoing statement of the Tariff Commission which was before Congress at the time the dutiable provision was included in the tariff act would in our opinion explain the method of assessing duty upon the metal content although the ore as imported does not contain metal as such.

When our appellate court was considering the classification of bulk silver ores in the case of *United States* v. *Nichols Copper Co.*, 29 C. C. P. A. 186, C. A. D. 190, it commented upon its decision in the *Alpha Lux* case, *supra*, and reiterated that in paragraph 1664 Congress provided that certain metallic mineral substances should be admitted free of duty. In approving its decision there made, the court stated:

It would, of course, have been more accurate to have stated that Congress in paragraph 1664 provided for the admission, duty free, of *certain* crude metallic mineral substances, which are illustratively enumerated; but as the only question

before us was whether the involved merchandise was a crude metallic mineral substance, preciseness of language not affecting the issue was not observed.

 *  *  *  *  *  *  *

We held in the *Alpha Lux* case, *supra*, that paragraph 1664 is clear and unambiguous, and we here affirm that holding.

&ast; &ast; &ast;. In the *Alpha Lux* case, *supra*, we held that all substances such as those specifically named in the paragraph, in order to be classifiable thereunder, must contain metal as such. This gives full scope and meaning to all the words of the paragraph.

 *  *  *  *  *  *  *

We have no hesitation in holding that the context of paragraph 1664. clearly shows that Congress intended that substances such as those which are specifically named in paragraph 1664, containing metallic mineral, should be regarded as crude metallic mineral substances.

&ast; &ast; &ast;. We do not apply the doctrine of *ejusdem generis* as a rule of construction, but by the use of the words "such as" in the paragraph we are required to determine whether a substance not specifically named in the paragraph is like or similar to, or belongs to the same class as, the substances therein named. &ast; &ast; &ast;.

Inasmuch as the involved merchandise is neither *eo nomine* provided for in paragraph 1664, nor is it *ejusdem generis* with the substances named therein, it is immaterial whether it be an ore within the meaning of paragraph 393, as classified by the collector, and it is not necessary for us to pass upon the correctness of his classification. Hence we express no opinion upon the holding of the trial court that the involved merchandise is not an ore.

From the foregoing it is clear that it has long been held that a metallic mineral substance contains metal as such and therefore all substances specifically named in paragraph 1664 must be of such character of mineral substances as contain metal. As pointed out by the Government in its brief, there are certain flue dusts which contain metal. Such substances would be free of duty under paragraph 1664, while flue dust not containing any free metal would be excluded from the paragraph.

Regarding the contention that the merchandise is a clay or earth, the Government witnesses pointed out that bauxite did not contain any aluminum silicate, the principal ingredient of clay. These witnesses also clearly established the difference between clays or earths and mineral substances and thereby showed the residue in question was within the latter classification. In respect to the statements of our appellate court in the *Alpha Lux* case, *supra*, that support the plaintiff's theory that crude bauxite from which aluminum is produced is a clay, our appellate court in the *Nichols* case, *supra*, in commenting upon certain language used by the court in the *Alpha Lux* case, *supra*, stated:

In this connection we quote from a decision on the patent side of our jurisdiction, which is applicable here. In the case of *Conover* v. *Downs*, 17 C. C. P. A. (Patents) 587, 35 F. (2) 59, we said:

&ast; &ast; &ast;. Undue liberties should not be taken with the language in a court decision. Rather it should be construed and applied in accordance with the

precise issue before the court. If this course is followed, much useless litigation may be avoided.

In the *Alpha Lux* case the only claim relied upon was that of a metallic mineral substance under paragraph 1664, and therefore loose statements made by our appellate court in its decision to the effect that bauxite was a clay or earth should not be accorded any weight.

The claim made in the protest that the merchandise is a waste and therefore dutiable as a waste, not specially provided for, under paragraph 1555 was not stressed at the trial. In view of the agreed statement of facts that after becoming a residue it was crushed or ground, the merchandise is clearly excluded from classification thereunder.

For the reasons stated, judgment will be entered in favor of the defendant.