REICHARD COULSTON, INC. *v.* UNITED STATES (No. 4543) [1]

United States Court of Customs and Patent Appeals, November 4, 1946

*Jordan & Klingaman* (*J. L. Klingaman* of counsel) for appellant.
*Paul P. Rao,* Assistant Attorney General (*Richard F. Weeks,* special attorney, of counsel), for the United States.

---

[1] C. A. D. 350.

[Oral argument October 2, 1946, by Mr. Klingaman and Mr. Weeks]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

Appellant imported at the port of New York merchandise invoiced as "synthetic red oxide of iron (crude) prepared from Bauxite Residue," and "synthetic red oxide of iron (calcined bauxite residue)." The collector assessed duty upon the importation at 30 per centum ad valorem under paragraph 214 of Tariff Act of 1930 as "Mfrs. of Mineral Substance  *  *  *." Paragraph 214 reads as follows:

PAR. 214. Earthy or mineral substances wholly or partly manufactured and articles, wares, and materials (crude or advanced in condition), composed wholly or in chief value of earthy or mineral substances, not specially provided for, whether susceptible of decoration or not, if not decorated in any manner, 30 per centum ad valorem; if decorated, 40 per centum ad valorem.

Appellant protested the classification, claiming that the merchandise was properly free of duty under paragraph 1664 as a metallic mineral substance in a crude state, or under paragraph 1719 as a crude mineral. It further claimed alternatively classification at 10 per centum ad valorem as waste under paragraph 1555, or at the same rate under paragraph 1558 as a nonenumerated unmanufactured article, or under paragraph 73. The protest was duly amended to further claim that the goods were dutiable as earth or clay at $1 or $2 per ton under paragraph 207, as amended by T. D. 49753.

The pertinent parts of the act, in addition to paragraph 214, read as follows:

PAR. 1719. Minerals, crude, or not advanced in value or condition by refining or grinding, or by other process of manufacture, not specially provided for.

PAR. 207. Clays or earths, unwrought and unmanufactured  *  *  *  not specially provided for, $1 per ton; wrought or manufactured, not specially provided for, $2 per ton  *  *  *

PAR. 1555. Waste, not specially provided for, 10 per centum ad valorem.

At the trial the record in the case of *Reichard Coulston, Inc.* v. *United States*, 12 Cust. Ct. 208, C. D. 856, was incorporated and constitutes all of the oral testimony of the present record. In addition, the only two exhibits in that case were stipulated to be the same in all material respects as the two in this case.

It appears that the imported merchandise was obtained by fusion, heating bauxite with sodium carbonate to form sodium aluminate and sodium ferrite. The mass was afterward treated with water in which the sodium aluminate was dissolved apparently forming alumina, which is then reduced to aluminum. The sodium ferrite by that treatment was decomposed into a sludge mainly of ferric oxide and ferric hydroxide. The sludge was pressed, dried, and

calcined, the calcination converting the ferric hydroxide into ferric oxide, which was the imported merchandise in granular form and powder resulting from the crushing thereof. The granular substance is used as a filler in paper and the powder is sold as a pigment to the paint industry.

The United States Customs Court (Third Division) in its decision (Abstract 50801) held that the imported merchandise was more specially provided for as classified than as claimed.

From the judgment overruling the protest, this appeal was taken.

Appellant here alleges error by the trial court in not holding the merchandise properly classifiable under each of the claimed paragraphs, but one, i. e., paragraph 73. Paragraph 73, therefore, may not be considered. In its brief, reliance is placed entirely upon the alternative claims made under paragraphs 1719, 207, and 1555. In oral argument counsel for appellant abandoned the claim that the merchandise is clay.

There is no dispute concerning the facts.

It is clear from the record and exhibits that the imported substance is soft, earthlike in appearance and mineralized. It is a mineral, but in our opinion it cannot be held to be crude in a tariff sense.

The involved merchandise is a product of the manufacturing or treating process of the crude mineral bauxite. In our opinion it cannot be successfully contended that the product which is the final result of an initial chemical reaction and further chemical change by calcination in which ferric hydroxide, $Fe_2(OH)_6$, is changed into ferric oxide, $Fe_2O_3$, can be anything less than a manufactured article or substance. Therefore, it cannot be termed crude. The term "crude," as it appears in tariff legislation, has been held by us to be a relative term, the context in which it is employed determining its meaning. United States v. Nicholas Copper Co., 29 C. C. P. A. (Customs) 186, C. A. D. 190. The use of that term in its context as it appears in 1719, we think, cannot properly be applied to the imported merchandise for the reasons heretofore given.

The case of Hampton, Jr., & Co. v. United States, 6 Ct. Cust. Appls. 392, T. D. 35926, is relied upon by appellant in its contention that the merchandise is crude. In that case the importation was molybdenite. It was classified by the Collector of Customs at the port of New York as a mineral substance partially manufactured under the provisions of paragraph 81 of the tariff act of 1913. It was claimed by appellant to be free of duty as a crude mineral not specially provided for under paragraph 549 of that act and was so held by this court. The record there, as stated in the decision, disclosed that molybdenite is a natural mineral composed of metal molybdenum and sulphur. As found in nature it is mixed with rock or gangue and obtained, as imported, by separating it from the

gangue. The separation process consisted in crushing the rock and separating the molybdenite therefrom by flotation. The molybdenite being lighter than the rock floated to the top when the crushed mass was put into water.

The molybdenite, as such, was in the same condition as found in nature and was merely separated from the gangue. The molybdenite was merely gotten by itself and was as crude as though it had been so mined. In the instant case it has not been shown that the imported merchandise exists by itself with the other oxides and the alumina content in a conglomerate mass, and the process resulting in its production is not merely a matter of mechanical separation of gangue from sought metal-bearing ore. Here the bauxite was subjected to chemical reaction as hereinbefore set out. Therefore, the decision in the *Hampton* case, *supra*, does not support appellant's contention.

The decision of the Circuit Court of Appeals for the Second Circuit in the case of *Kuttroff, Pickhardt & Co.* v. *United States*, 169 Fed. 283, T. D. 29701, 17 Treas. Dec. 342, we think has some application here. The issue there was whether or not chrome alum was in a crude state. It was a byproduct obtained in the process of manufacturing certain coal-tar colors. In the process chromium sulphate and potassium sulphate were formed and combined with water to constitute chrome alum; but remained at the end of the process "as a grayish, greenish paste." The paste thereafter was treated with sulfuric acid and from the solution the imported merchandise freed from incidental impurities was crystallized. There the court stated that the crude condition of the imported merchandise seemed to be the paste stage of its production. So here, seemingly, it might be stated that the sludge stage of the process is the crude condition of the involved goods.

We are of the opinion that the merchandise, in a tariff sense, is not properly classifiable as an earth under paragraph 207. It has not been shown to be earth as such when taken from the ground as appears in the case of *United States* v. *Von Oefele*, 4 Ct. Cust. Appls. 15, T. D. 33200, relied upon by appellant. It would seem that in order to come within the scope of paragraph 207 as an earth it would have to have existed as such when it was taken from the ground without change in its character as an earth when imported.

On this record it cannot be said, in the light of the tariff act that the goods are waste, not specially provided for. It seems to us that the processing of bauxite results in at least two valuable substances— the alumina and the sludge. Unquestionably the sludge is valuable and has been processed by calcination to advance its condition for ultimate use as a filling and coloring agent. *United States* v. *Swift & Co.*, 14 Ct. Cust. Appls. 222, 227, T. D. 41706.

Appellant in its brief discusses our decision in the case of *Alpha Lux Co., Inc.* v. *United States*, 27 C. C. P. A. (Customs) 162, C. A. D. 79, stating that we held the imported merchandise which was a bauxite residue after alumina had been removed to be a waste not specially provided for. It is argued that "Inasmuch as the calcination merely put the imported commodity back into the dry state as it existed in nature, this process should not stand in the way of the waste classification." The bauxite residue there contained about 17 per centum oxide of alumina and was used for removing hydrogen sulphite from illuminating gas. There the sole issue was whether the merchandise described as "spent iron ore" and "crude iron ore" was properly dutiable as a metallic mineral substance in a crude state under paragraph 1664 of the Tariff Act of 1930, or as "waste, not specially provided for," under paragraph 1555. Of course, since the imported goods were held not to be properly classifiable as claimed by the appellant, the presumption attaching to the correctness of the collector's classification impelled the conclusion that it was correct. It probably would be better to have stated that since the claim of the appellant was found to be without merit, the collector's classification had to be upheld by reason of the presumption of correctness attaching to it.

Earlier in that decision it was stated that the ore (bauxite) "is a clay." While it was not necessary to state the character of the ore, it would have been more accurate to have said that bauxite is a "clay-like substance."

The burden was on appellant to establish not only that the collector had erred in his classification, but to prove the correctness of the claims in its protest. For the reasons hereinbefore stated, we are compelled to hold that the merchandise is not free of duty, nor properly classifiable as claimed. The protest was properly overruled by the trial court and its judgment is *affirmed*.