THOMAS, Collector of Customs, v. WILLIAM CRAMP & SONS' SHIP & ENGINE BLDG. CO.

(Circuit Court of Appeals, Third Circuit. January 16, 1906.)

No. 30.

CUSTOMS DUTIES—CLASSIFICATION—BRONZE HARDENER—METAL UNWROUGHT— METALLIC MINERAL SUBSTANCE.

An alloy in the form of pigs, which is used chiefly in hardening manganese bronze, and which, in order to produce that effect, must be melted and mixed with other metals, *held* to come within paragraph 183, Schedule C, § 1, c. 11, Tariff Act July 24, 1897, 30 Stat. 166 [U. S. Comp. St. 1901, p 1645], relating to "metallic mineral substances in a crude state, and metals unwrought," rather than paragraph 193, 30 Stat. 167 [U. S. Comp. St. 1901, p. 1645], relating to articles composed of metal, or paragraph 122, 30 Stat. 159 [U. S. Comp. St. 1901, p. 1636], by similitude to the "ferro-manganese" there enumerated.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For decision below, see 139 Fed. 303, reversing a decision of the Board of United States General Appraisers, which had affirmed the assessment of duty by the appellant in this case, C. Wesley Thomas, collector of customs at the port of Philadelphia. Note U. S. v. Roessler & Hasslacher Chemical Co. (C. C. A.) 137 Fed. 770.

J. Whitaker Thompson, U. S. Atty., and William M. Stewart, Jr., Asst. U. S. Atty., for the collector.

E. S. Hatch (J. Stuart Tompkins, of counsel), for the importers.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. The imported merchandise in question was invoiced as "iron and manganese alloy." It was classified and assessed for duty by the collector under Tariff Act July 24, 1897, c 11, § 1, Schedule C, par. 172, 30 Stat. 165 [U. S. Comp. St. 1901, p. 1643], as an alloy "in which aluminum is the component material of chief value." The importer having duly protested against the classification and assessment, the matter came before the Board of United States General Appraisers. The board sustained the action of the collector. In their decision the Board of General Appraisers found the facts relating to the iron and manganese alloy to be as follows:

"It appears from the testimony that the material in question is imported in the form of pigs, and that the iron and manganese alloy is used for hardening bronze, and the copper and tin alloy in the manufacture of anti-friction bearings, etc. It also appears that the metal is not further advanced in manufacture than 'metals unwrought' as that term is used in paragraph 183 of the tariff law (30 Stat. 166 [U. S. Comp. St. 1901, p. 1645]). No evidence has been introduced by the importer that contraverts the finding of the appraiser that the iron and manganese alloy contains aluminum, and that the aluminum is the component of chief value therein. * * * The protests are accordingly overruled as to the iron and manganese alloy, and the decision of the collector assessing duty thereon under paragraph 172 is affirmed."

From this decision of the Board of General Appraisers in respect to the "iron and manganese alloy" the importer appealed to the Circuit Court. Pending this appeal, additional testimony was taken on behalf of the importer, which established beyond doubt the fact that this merchandise contains no aluminum.

After hearing and argument, the Circuit Court delivered the following opinion:

"The merchandise in question is an alloy of metal, composed of 62 per cent. of iron, 32 per cent. of tin, and 6 per cent. of manganese. It is chiefly used as a hardener in the manufacture of manganese-bronze, although it is capable of being used for some other purposes. The Board of Appraisers classified it, under paragraph 172 of the tariff act of 1897, as an alloy of which aluminum is the component material of chief value, but this is conceded to have been a mistake. The question for decision now is whether the material should be classified, under paragraph 183, as a metallic mineral substance in a crude state, or a metal unwrought, or under paragraph 122 (30 Stat. 159 [U. S. Comp. St. 1901, p. 1636]), either directly or by similitude, as ferro-manganese, or under paragraph 193 (30 Stat. 167 [U. S. Comp. St. 1901, p. 1645]), as an article or ware of metal, either partially or wholly manufactured, not specially provided for. The testimony leaves the answer in some doubt, but I have finally come to the conclusion that paragraph 183 is more nearly applicable than either of the other two. The alloy is of no use in its present condition. It must be melted and mixed with other metals to

produce such effect as it is capable of producing, and the process it has already undergone is so obviously a mere preliminary that it seems to me to be properly described as a metal unwrought. Inspection of the sample tends to confirm this conclusion. The decision of the Board of General Appraisers is reversed, with instructions' to classify the merchandise under paragraph 183."

And the following decree was entered by the court in accordance with the foregoing opinion:

"It is ordered, adjudged, and decreed that the decision of the Board of United States General Appraisers herein be, and the same is hereby, reversed; and it is further ordered, adjudged, and decreed that the merchandise which has been the subject of this proceeding is dutiable at 20 per cent. ad valorem, under paragraph 183 of the tariff act of July 24, 1897."

From the decree of the Circuit Court, the collector took the present appeal. The importer did not appeal from the decree.

The collector (the appellant) contends here, as he urged in the court below, that the merchandise in question was dutiable under paragraph 193 of the act. The importer urged in the court below (and here repeats the argument) that the merchandise was properly, dutiable under paragraph 122 as "ferro-manganese," but, if not so dutiable, then it should be classified and assessed under paragraph 183 as the Circuit Court held. These three paragraphs of the act read thus:

"122. Iron in pigs, iron kentledge, spiegeleisen, ferro-manganese, ferro-silican, wrought, and cast scrap iron, and scrap steel, four dollars per ton."

"183. Metallic mineral substance in a crude state, and metals unwrought, not specially provided for in this act, twenty per centum ad valorem." '

"193. Articles or wares not specially provided for in this act, composed wholly or in part of iron, steel, lead, copper, nickel, pewter, zinc, gold, silver, platinum, aluminum, or other metal, and whether partly or wholly manufactured, forty-five per centum ad valorem."

Upon an attentive examination of the evidence, we are entirely satisfied that the learned judge of the court below was right in holding that this merchandise was dutiable under paragraph 183 of the tariff act of 1897. There is ample evidence in the record to show that the alloy in question is a metallic mineral substance in a crude state, and also ample evidence to show' that it comes within the category of "metals unwrought." In this connection, it is well to refer to the above-quoted extract from the opinion of the Board of General Appraisers, which contains this significant finding:

"It also appears that the metal is not further advanced in manufacture than 'metals unwrought' as the term is used in paragraph 183 of the tariff law."

The judgment of the Circuit Court is affirmed.