(C.D. 2199)

PHILIPP BROS. ORE CORP. *v.* UNITED STATES

65

United States Customs Court, Third Division

(Decided August 30, 1960)

*Eugene R. Pickrell* (*George E. Long* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Murray Sklaroff* and *Margaret M. Vallerie*, trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: The merchandise involved in this case is described on the invoice as tantalite-columbite concentrate and was assessed with duty by the collector at 15 per centum ad valorem under paragraph 214 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, as earthy or mineral substances, wholly or partly manufactured, not decorated. It is claimed in the protest, as amended, that the merchandise is free of duty under paragraph 1664 of said tariff act as a metallic mineral substance in a crude state, or under paragraph 1719 of said tariff act as a mineral, crude, or not advanced in value or condition by refining, grinding, or other process of manufacture, or that it is dutiable under paragraph 5 of said tariff act, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, at 11 per centum ad valorem, as a mixture of chemical compounds, or under paragraph 1558 of the said tariff act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739 and T.D. 52827, at 10 per centum ad valorem as a nonenumerated manufactured article.

According to the deposition of Dr. Hans-Joachim Friedrich, chemical engineer employed by Hermann C. Starck, producer of the mer-

chandise, it is a mixture of tantalum oxide and columbium oxide with impurities consisting of titanium oxide, tin oxide, iron oxide, calcium oxide, silica, and small quantities of oxides of zirconium and rare earths. It was produced from tin slags as follows:

The tin slags are melted together with carbon and iron in an electric furnace. The resulting ferro alloy, containing tantalum and columbium in the form of carbide, is separated from the slag, which contains only traces of tantalum and columbium, by decantation. The ferro alloy is crushed, milled and leached with boiling hydrochloric acid in order to dissolve most of the iron. The residue from this operation contains mainly crude tantalum and columbium carbide. If necessary, the crude carbides are leached with caustic soda solution in order to remove ferro silicon. After drying, the crude carbides are oxidized by igniting in air.

The chemical analysis of the product, as given by this witness, and in a report of Ledoux & Company, engineers, chemists, and assayers (plaintiff's exhibit 3), is as follows:

| | |
|---|---|
| Columbium Oxide | 25.40% |
| ($Cb_2O_5$) | |
| Tantalum Oxide | 23.44% |
| ($Ta_2O_5$) | |
| Titanium Oxide | 6.72% |
| ($TiO_2$) | |
| Tin Oxide | 0.52% |
| ($SnO_2$) | |

A report of the United States Customs Laboratory (plaintiff's exhibit 2) states:

The sample in powder form is composed chiefly of the oxides of columbium and tantalum with small amounts of oxides and silicates of iron, manganese and titanium. We find no evidence of metal as such.

At the trial, W. C. Bowden, chemist and vice president of Ledoux & Company, testified that tantalite-columbite concentrates are used for the eventual manufacture of columbium and tantalum metal; that he has analyzed tantalite-columbite concentrates obtained from ore as distinguished from the method by which these concentrates were obtained; that the imported merchandise did not differ in physical or chemical properties from tantalite-columbite concentrates obtained from ore; and that it could be used in a similar manner. In his opinion, the merchandise was a metallic mineral substance because the principal elements are columbium and tantalum and the final use of columbium and tantalum is as a metal. He added that no metal could be found during the course of analysis; that since the columbium and tantalum were present as oxides, the merchandise was in a crude form; and that the refined form would be the metal. He said that it would be necessary to further process the merchandise before it could be used and that this would be true of columbite-tantalite concentrates derived from ore.

The witness testified further that the oxides composing the merchandise were chemical compounds and that all except calcium oxide and silica were metallic mineral substances. In his opinion, the merchandise was a mixture of chemical compounds.

On cross-examination, Mr. Bowden stated that a slag was an intermediate substance in between an ore and a concentrate in refining to a metal; that tin slag is derived from a tin concentrate and is a waste from refining. The witness stated that tin oxide was a metallic mineral substance but that aluminum oxide was not, basing his conclusion on the final use of the material.

The issue involved in this case is whether the merchandise was properly classified by the collector under paragraph 214, as modified, as earthy or mineral substances, wholly or partly manufactured, or whether it is provided for under one of the paragraphs under which plaintiff is claiming.

The pertinent provisions of the tariff act, or said act, as modified, are:

Paragraph 214 [as modified by the General Agreement on Tariffs and Trade, T.D. 51802]—

Earthy or mineral substances wholly or partly manufactured and articles, wares, and materials (crude or advanced in condition), composed wholly or in chief value of earthy or mineral substances, not specially provided for, whether susceptible of decoration or not (except synthetic materials of gem stone quality, such as corundum and spinel, and articles and wares composed wholly or in chief value of such materials, and except marble chip or granite):

    If not decorated in any manner:

      \*      \*      \*      \*      \*      \*      \*

    Other_____ 15% ad val.

Par. 1719. Minerals, crude, or not advanced in value or condition by refining or grinding, or by other process of manufacture, not specially provided for.

Par. 1664. Metallic mineral substances in a crude state, such as drosses, skimmings, residues, brass foundry ash, and flue dust, not specially provided for.

Paragraph 5 [as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108]—

All chemical elements, all chemical salts and compounds, all medicinal preparations, and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for, \* \* \*_____ 11% ad val.

Paragraph 1558 [as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739 and T.D. 52827]—

Articles manufactured, in whole or in part, not specially provided for \* \* \*_____ 10% ad val.

It is plaintiff's contention that the merchandise is not properly classifiable under paragraph 214, as modified, under the provision for "Earthy or mineral substances wholly or partly manufactured and articles, wares, and materials (crude or advanced in condition), composed wholly or in chief value of earthy or mineral substances" on the ground that said paragraph was not intended to cover metallic mineral substances. Reliance is placed on the fact that paragraph 214 appears in schedule 2 of the Tariff Act of 1930, which is headed "Earths, Earthenware, and Glassware."

The actual language used in paragraph 214 is comprehensive, including all earthy or mineral substances and articles or wares composed thereof, the only qualification being that they are "not specially provided for." On the other hand, the provision for metallic mineral substances in paragraph 1664 is limited to such substances "in a crude state, such as drosses, skimmings, residues, brass foundry ash, and flue dust, not specially provided for," indicating that other metallic mineral substances were covered by other provisions of the tariff act. Congress was aware that such substances had been held dutiable under the earthy or mineral substances paragraphs of prior tariff acts, since the Summary of Tariff Information, 1929, which was before Congress when the Tariff Act of 1930 was being prepared, included the following substances as having been so classified: Rutile ready for use for the manufacture of titanium metals; hematite ore powdered; burrowlite, consisting of processed iron ore; and spathic iron ore. As no change in language was made, it is clear that Congress did not intend to limit paragraph 214 to nonmetallic mineral substances.

This is the construction given to the paragraph by the courts. In *Burrowlite Products Co.* v. *United States*, 52 Treas. Dec. 234, T.D. 42415, the merchandise was a product of iron ore, which had been roasted, the slag removed, most of the sulphur removed, and the remaining substance ground. It was held that it was not iron ore but was properly classified by the collector as an earthy or mineral substance, wholly or partly manufactured.

In *J. T. Ball et al.* v. *United States*, 72 Treas. Dec. 104, T.D. 49075, the merchandise was a powder composed chiefly of silica, alumina, beryllium oxide, calcium oxide, and other chemicals. The court held the merchandise classifiable as an earthy or mineral substance, stating (p. 109):

* * * Silica is found in nature as quartz, and is universally distributed and one of the commonest of minerals, as the sand of the seashore, and sandstone deposits and the silicates formed by the union of silicic acid with bases of alumina, lime, magnesia, potassa, soda, etc., constitute by far the greater number of the minerals which compose the crust of the globe. See Century Dictionary and Cyclopedia, Vol. 7, page 5628. Alumina, also, is defined in the same dictionary as, "The oxide of aluminum, the most abundant of the earths." Beryllium oxide is the oxide of the metal beryllium, which occurs in nature

only in combination with the mineral beryl. The mineral is composed of a compound of beryllium oxide, alumina and silica dioxide. Calcium is a metal which never occurs free in nature, always being in combination with silicates, phosphates, surphates, carbonates, etc., and calcium oxide is a lime which is described by Hoffmann as a distinct earth. Sodium is also a metal and is widely distributed in nature in combination with chloride, as the common salt and sodium carbonate. Sodium oxide is a chemical not appearing in nature as such. From the dictionary description of the terms and the common understanding of the chemicals composing the powder in question, there is no doubt but that a large proportion thereof comprises substances found abundantly throughout the earth's surface. We think that such substances are more specifically described as earthy or mineral substances than as chemical compounds or mixtures. * * *

In a more recent case, *United States* v. *C. J. Tower & Sons*, 43 C.C.P.A. (Customs) 49, C.A.D. 608, it was held that stabilized zirconium oxide was properly classified as an earthy or mineral substance, wholly or partly manufactured.

In view of the terminology of the statute, and the judicial decisions thereunder, it is our view that all mineral substances, or articles composed thereof, whether or not metallic, not specially provided for, are classifiable under paragraph 214. That would include the instant merchandise, unless it is more specifically provided for under some other provision of the tariff act.

One of plaintiff's claims is that this merchandise is entitled to free entry under the provision in paragraph 1719 for "Minerals, crude, or not advanced in value or condition by refining or grinding, or by other process of manufacture." In view of the decision in *United States* v. *C. J. Tower & Sons, supra,* that zirconium compound was not zirconium concentrate because produced by chemical treatment, it was conceded in the present case that the instant merchandise does not come within the modification of paragraph 1719 for columbium or niobium ore or concentrate, but it is claimed that the merchandise is a crude mineral.

It is to be noted, first of all, that the provision in paragraph 1719 is for "*Minerals*, crude," and not for "mineral substances." The term "mineral" is defined as follows:

Any chemical element or compound occurring naturally as a product of inorganic processes. * * * Except in rare instances they have a definite molecular structure which manifests itself in crystal form, optical properties, etc. * * * (Webster's New International Dictionary.)

An inorganic homogeneous substance of definite or approximately definite chemical composition, found in nature. (Funk and Wagnalls New Standard Dictionary.)

Mineral, inorganic substance occurring in nature, having a characteristic and homogeneous chemical composition, definite physical properties, and, typically, a definite crystalline form. (The Columbia Encyclopedia, p. 1287.)

A mineral may be defined as a *substance occurring in nature with a characteristic chemical composition and usually possessing a definite crystalline structure,*

*which is sometimes expressed in external geometrical forms or outlines.* Characteristic of a mineral is its occurrence in nature. A chemical substance, for example, CaSO₄, may be found in nature, or it may be prepared in the chemical laboratory. When found in nature, it is designated as a mineral and has a special mineralogical name assigned to it, anhydrite. When prepared in the laboratory it is not interpreted as a mineral but is usually referred to by its chemical name, calcium sulfate. In order to be classified as a mineral, therefore, a substance must be the product of nature and not the result of processes carried on in the laboratory. (Kraus, Hunt, and Ramsdell, *Mineralogy,* p. 6.) [Emphasis quoted.]

See also Dana's Manual of Mineralogy, 16th edition, p. 4; Collier's Encyclopedia, vol. 13, p. 633; The Encyclopedia Americana, vol. 19, p. 164.

The merchandise involved in this case is not columbite or tantalite as found in nature but is a product of a complex manufacturing process. While it may have the same physical and chemical properties, as stated by the witness, it is not the same substance and apparently does not have the same chemical formula.[1] It is, therefore, not a mineral, as that term is commonly understood, or as used in the tariff act.

Tariff Commission publications include under provisions for crude minerals in this and other tariff acts commodities such as Cornwall stone, feldspar, garnet, gravel, and ores of tantalum, titanium, uranium, vanadium, and zirconium, and other metallic ores. Summary of Tariff Information, 1921, p. 1375; Dictionary of Tariff Information, p. 485; Summary of Tariff Information, 1929, p. 2444; Summaries of Tariff Information, 1948, vol. 16, part 3, p. 217 ff. It has been held that tungsten ore is a crude mineral (*O. G. Hempstead & Son v. Thomas, Collector,* 122 Fed. 538); that molybdenite, freed from rock by crushing the rock and by flotation, is a mineral, not advanced in value or condition (*Hampton, Jr., & Co. v. United States,* 6 Ct. Cust. Appls. 392, T.D. 35926); that vanadium ore imported as mined and in the crudest form obtainable is a crude mineral (*Vincent J. Thompson v. United States,* 14 Treas. Dec. 291, T.D. 28467); and that calcite crystal, cleaved out of rock and split, is a crude mineral (*California Institute of Technology v. United States,* 65 Treas. Dec. 934, T.D. 47092).

In the General Agreement on Tariffs and Trade, T.D. 51802, and in the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, the following items were enumerated under the provision for crude minerals in paragraph 1719: Lignite, Cornwall stone, gravel, natural gas, nepheline syenite, beryllium ore, titanium ore, columbium or niobium ores or concentrates, tantalum ore, and zirconium ores or concentrates, and vanadium ores or concentrates.

[1] Cf. the formulas in plaintiff's exhibits 1 and 3, quoted, *supra,* and those given for columbite or tantalite found in nature: (Fe, Mn) (Ta, Cb) $_2O_6$ and (Fe, Mn) (Cb, Ta) $_2O_6$—Kraus, Hunt, and Ramsdell, *op. cit.,* p. 453; Dana, *op. cit.,* pp. 521, 529.

All of the foregoing indicates that the provision for crude minerals was intended to include only minerals as found in nature, in a crude state.

On the other hand, in *Reichard Coulston, Inc.* v. *United States*, 34 C.C.P.A. (Customs) 108, C.A.D. 350, it was held that red oxide of iron prepared from bauxite residue was not a crude mineral. That court said (p. 110):

The involved merchandise is a product of the manufacturing or treating process of the crude mineral bauxite. In our opinion it cannot be successfully contended that the product which is the final result of an initial chemical reaction and further chemical change by calcination in which ferric hydroxide, $Fe_2(OH)_6$, is changed into ferric oxide, $Fe_2O_3$, can be anything less than a manufactured article or substance. Therefore, it cannot be termed crude. The term "crude," as it appears in tariff legislation, has been held by us to be a relative term, the context in which it is employed determining its meaning. *United States* v. *Nicholas Copper Co.*, 29 C.C.P.A. (Customs) 186, C.A.D. 190. The use of that term in its context as it appears in 1719, we think, cannot properly be applied to the imported merchandise for the reasons heretofore given.

See also *United States* v. *C. J. Tower & Sons, supra*, wherein the court held that the zirconium oxide could not be classified as a crude mineral as the furnace treatment and crushing served to advance it in value and condition.

Since the merchandise involved herein is not a substance occurring in nature but is the end result of a manufacturing or treatment process, it is not classifiable under paragraph 1719 as a crude mineral.

The next question is whether it is classifiable under paragraph 1664 as a metallic mineral substance in a crude state.

It is significant that the tariff provision here under consideration is not for metallic minerals, which would mean ores of metals, but for metallic mineral substances in a crude state. For many years, this provision was coupled with one for metals, unwrought (paragraph 215, Tariff Act of 1883; paragraph 202, Tariff Act of 1890; paragraph 183, Tariff Act of 1897; paragraph 183, Tariff Act of 1909; paragraph 154, Tariff Act of 1913; paragraph 1562, Tariff Act of 1922). Until 1922, these commodities were dutiable, but, in the Tariff Act of 1922, they were granted free entry. In 1930, the provision for metals, unwrought, was deleted and exemplars added to the provision for metallic mineral substances in a crude state: Drosses, skimmings, residues, brass foundry ash, and flue dust.

In a case arising under the Tariff Act of 1897, *O. G. Hempstead & Son* v. *Thomas, Collector, supra*, it was held that tungsten ore was not dutiable as a metallic mineral substance in a crude state, but was free of duty as a crude mineral. In the course of its opinion, the court noted that there was no common, well-recognized commercial or trade meaning for the term "metallic mineral substance." Resort-

ing to the Standard Dictionary definition of "metallic" as "being, containing, or having characteristics of a metal," it held that tungsten ore was not metallic, since it consisted of tungsten oxide, contained no tungsten metal as such, had none of the characteristics of a metal, and had to be treated by an elaborate chemical process to obtain the metal.

Following this case, zinc ores and vanadium ore were held classifiable as crude minerals rather than as metallic mineral substances. *Cockerill Zinc Company* v. *United States*, 13 Treas. Dec. 125, T.D. 27891; *Vincent J. Thompson* v. *United States, supra*; *United States* v. *Brewster*, 167 Fed. 122.

In *United States* v. *Wells, Fargo & Co.*, 1 Ct. Cust. Appls. 158, T.D. 31211, the court stated that metallic mineral substances consist of a metal combined with some foreign or other substance, and it was held that rhodium, a pure metal, was not a metallic mineral substance but was classifiable as a metal, unwrought.

Commodities which have been held classifiable under tariff acts prior to that of 1930 as metallic mineral substances in a crude state include an alloy of iron, tin, and manganese (*Thomas* v. *Cramp & Sons' Ship & Engine Bldg. Co.*, 142 Fed. 734, T.D. 27034); aluminum dross, composed of aluminum oxide, aluminum, iron oxide, and silica (*B. R. Lawrence* v. *United States*, 23 Treas. Dec. 643, Abstract 30958); oxidized steel or iron formed by the action of air on iron or steel (*Louis Sukernek, Jr.* v. *United States*, 48 Treas. Dec. 735, Abstract 50358). Solder, copper dross, and solder dross have been classified as metals, unwrought. *United States* v. *Jacobson & Sons Co.*, 10 Ct. Cust. Appls. 191, T.D. 38551; *Samuel Seiger* v. *United States*, 39 Treas. Dec. 243, T.D. 38687; *Redden & Martin* v. *United States*, 38 Treas. Dec. 59, T.D. 38251.

In *American Smelting & Refining Co.* v. *United States*, 12 Ct. Cust. Appls. 212, T.D. 40226, it was held that arsenical flue dust, a fine powder containing arsenious acid, a byproduct of lead smelting operations, could not be classified as a metallic mineral substance since it contained no metal as such.

The same result was reached in *American Smelting & Refining Co.* v. *United States*, 16 Ct. Cust. Appls. 46, T:D. 42718, which involved flue dust containing oxides of cadmium, lead, iron, zinc, arsenic, and sulphur, and other substances.

In a case arising under the Tariff Act of 1930, it was held that certain fluxes and slags were classifiable as metallic mineral substances. *American Smelting & Refining Co.* v. *United States*, 62 Treas. Dec. 1018, Abstract 22178. In a subsequent case, *Marks Lissberger & Son, Inc.* v. *United States*, 73 Treas. Dec. 1035, T.D. 49634, it was held that solder dross or oxide obtained as a byproduct in the manufacture of

solder, containing 36 per centum tin and 53 per centum lead was classifiable as a metallic mineral substance in a crude state. In discussing paragraph 1664, *supra*, the court said (p. 1039) :

Manifestly, the new phraseology in said paragraph gives to the term "Metallic mineral substances in a crude state" a more definite meaning by naming as exemplars certain metallurgical byproducts, to wit, "drosses, skimmings, residues, brass foundry ash, and flue dust." And since it is uncontradicted that the involved merchandise is both a dross and a skimming, it would appear, as alleged by the plaintiff, that the *eo nomine* provision therefor in said paragraph 1664 is a more specific designation for the merchandise than is the provision in said paragraph 392 for "alloys and combinations of lead not specifically provided for", as contended for by counsel for the Government.

Another example of the type of merchandise classifiable under paragraph 1664 was involved in *United States* v. *C. J. Tower & Sons*, 40 C.C.P.A. (Customs) 14, C.A.D. 491. This was so-called "Abrasive Sludge 81," an unwanted byproduct resulting from the treatment of bauxite to produce an abrasive, consisting of iron, and other metals, carbon, aluminum oxide, and other substances. The court of appeals affirmed the decision of this court in which it was stated (*C. J. Tower & Sons* v. *United States*, 26 Cust. Ct. 284, 304, C.D. 1337) :

The abrasive sludge in controversy is clearly a residue, and the analysis of it, as quoted earlier in this opinion, indicates that it contains metal as such. Being one of the exemplar products enumerated in said paragraph 1664, we find and hold, in view of the foregoing authorities, that the importation in issue is a metallic mineral substance in a crude state, such as drosses, skimmings, residues, brass foundry ash, and flue dust, not specially provided for, and is entitled to entry free of duty. * * *

On the other hand, in *Alpha Lux Co., Inc.* v. *United States*, 27 C.C.P.A. (Customs) 162, C.A.D. 79, it was held that a residue remaining from the extraction of aluminum from crude bauxite ore, which residue contained 17 per centum oxide of alumina, was not classifiable as a metallic mineral substance. In the course of its opinion, the court quoted paragraph 1664 of the Tariff Act of 1930, *supra*, and paragraph 1562 of the Tariff Act of 1922, which provided for metallic mineral substances in a crude state, and metals, unwrought, and stated (p. 164) :

We agree with the trial court that had the change in the act of 1922 merely gone to the extent of eliminating the second clause of paragraph 1562, *supra*, that many drosses, skimmings, and other residues would have been made dutiable.

The Congress, however, clearly intended that these substances should continue to be held duty free and inserted the *eo nomine* designation in the act of 1930.

There can be no doubt but that said paragraph 1562, *supra*, provided for substances containing metal as such. *Hempstead* v. *United States*, 122 Fed. 538; *American Smelting & Refining Co.* v. *United States*, 12 Ct. Cust. Appls. 212, T.D. 40226.

Paragraph 1664 of the present act provides for the admission, duty free, of crude metallic mineral substances. These substances are illustratively enumer-

ated. The involved merchandise is not a metallic mineral substance nor is it derived from a metallic mineral substance.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

A review of the scientific authorities reveals that bauxite is not a metallic mineral substance but is a mineral containing chemical elements which must be processed in order that a metal may be produced. \* \* \*

The meaning of paragraph 1664 was further clarified in *United States* v. *Nichols Copper Co.*, 29 C.C.P.A. (Customs) 186, C.A.D. 190, which involved merchandise invoiced as "bulk silver ores," being a substance containing silica, silver, gold, zinc, and other substances. It appears from testimony quoted in the opinion of the appellate court, *supra*, or of the trial court (*Nichols Copper Co.* v. *United States*, 6 Cust. Ct. 158, C.D. 453) that the merchandise was made from slag and that it was used as a flux in smelting operations, after which the silver and gold were recovered. The court held that it was not classifiable under paragraph 1664 since it was neither *eo nomine* provided for in that paragraph nor was it *ejusdem generis* with the substances named therein. In the course of the opinion, the court pointed out that paragraph 1664 does not include *all* metallic mineral substances in a crude state, but only those "such as drosses, skimming, residues, brass foundry ash, and flue dust," and that all substances such as those specifically named in the paragraph, in order to be classifiable thereunder, must contain metal as such. The court stated further that "by the use of the words 'such as' in the paragraph we are required to determine whether a substance not specifically named in the paragraph is like or similar to, or belongs to the same class as, the substances therein named."

On the basis of the cases cited, particularly those arising under the Tariff Act of 1930, it is evident that while the term "metallic mineral substances" standing alone might have a broad meaning, the provision in paragraph 1664 of the Tariff Act of 1930 is limited to crude metallic mineral substances, such as, like, or similar to the commodities enumerated therein, drosses, skimmings, residues, brass foundry ash, and flue dust, containing metal as such.

Tariff Commission publications which were before Congress prior to the enactment of various tariff acts indicate also that the term "metallic mineral substances" was intended to have a limited meaning. For instance, the Summary of Tariff Information, 1921, states (p. 1295) :

Description and uses.—The terms "metallic mineral substances" and "metals unwrought" apply to metals in their native state or in a crude or raw condition and not elsewhere provided for. The former term has been interpreted to embrace such merchandise as aluminum foundry ashes, zinc dross or galvanizers' skimmings, tin dross, and meteoric iron. \* \* \*

The Summary of Tariff Information, 1929, p. 2310, lists the following articles as being covered by the provisions for metallic mineral substances in a crude state or metals, unwrought: "Metallic calcium, strontium, lithium, barium, sodium, potassium, zinc dross, tin dross, tin and lead alloy, composition metal, not in chief value of copper, mill cinders, silicious residues, and brass foundry ashes."

Dross has been defined as—

The scum which forms on the surface of a metal, esp. lead, zinc, aluminum, or antimony, when molten or melting, due largely to oxidation, but sometimes to rising of dirt and impurities to the surface. (Webster's New International Dictionary.)

Slag, of which dross is a type, has been described as—

The dross, scoria, or recrement, of a metal; specif., a product of smelting, containing, mostly as silicates, the substances not sought to be produced as matte or metal, and having a lower specific gravity than the latter;—called also, esp. in iron smelting *cinder*. The slag of iron blast furnaces is essentially silicate of calcium, magnesium, and aluminum; that of lead and copper smelting furnaces contains iron silicate. (Webster's New International Dictionary.)

The within merchandise is not a slag, nor a residue, nor a byproduct of a metallurgical operation. It has itself been produced from tin slag. The latter may be a metallurgical byproduct and a metallic mineral substance, but the instant merchandise is a new product, having a new name and use, the result of an elaborate processing of the tin slag. It is not such as, like, similar to, or of the same class as the exemplars enumerated in paragraph 1664. Therefore, it cannot be classified under that paragraph as a metallic mineral substance in a crude state.

Plaintiff's next claim is that the merchandise is a mixture of chemical compounds within the scope of paragraph 5 of the Tariff Act of 1930, as modified.

According to the testimony of the witness, Bowden, each of the components of the merchandise is a chemical compound. It is evident, however, that they were not joined together by mechanical mixing but that the commodity is the result of an elaborate process involving melting in an electric furnace, decantation, crushing, milling, leaching, drying, and oxidizing.

In *United States* v. *Shell Oil Co., Inc., et al.*, 44 C.C.P.A. (Customs) 54, C.A.D. 637, it was held that merchandise known as "Teepol," used principally as a detergent, was not a mixture within the meaning of paragraph 5, *supra*. In the course of the opinion, the court stated (pp. 58, 59):

It would appear that the natural meaning of the word "mixture" should be limited to an association of materials produced by an actual mixing operation,

as distinguished from one in which the materials are found together in nature or are jointly produced by some artificial process other than mixing, and this seems to be the view which has been taken in prior decisions.

\* \* \* \* \* \* \*

The record discloses that "Teepol" is not produced by a mere mixing of its ingredients but by an elaborate process involving cracking, chemical reaction and extraction and may include different chemical compounds in relatively close association. We are therefore of the opinion, in view of the decisions above-cited and of the commonly accepted meaning of the word "mixture," that "Teepol" is not a mixture within the meaning of paragraph 5. On the other hand, as pointed out by the Customs Court in the instant case, "Teepol" is a finished commercial product, a synthetic detergent, and is made by a series of steps which definitely constitute it a manufactured commodity.

While the instant commodity may not be a finished commercial product, such as "Teepol" was, it was not produced by a mere mixing of its ingredients but by an elaborate process. We conclude that this merchandise is more than a mixture and does not fall within the scope of paragraph 5, *supra*.

Furthermore, it has been held that where the main constituents of a commodity are minerals or mineral substances, the merchandise is more specifically provided for under the provisions for earthy or mineral substances. *United States* v. *Kraemer & Co. et al.*, 4 Ct. Cust. Appls. 433, T.D. 33858; *J. T. Ball et al.* v. *United States, supra*; *American Agile Corp. et al.* v. *United States*, 72 Treas. Dec. 416, T.D. 49202. In the *Kraemer* case, the court pointed out that Congress had distinguished between chemical substances and mineral substances for dutiable purposes and regarded each as a different subject, and in *American Agile Corp. et al.* v. *United Sates, supra*, the court held that welding compound composed of ferromanganese, iron oxide, and silica, being derived from minerals and having the nature or character of a mineral, was more specifically provided for as an earthy or mineral substance than as a mixture of chemical compounds.

Since this merchandise is provided for under paragraph 214 as earthy or mineral substances, wholly or partly manufactured, the claim that it should be classified under paragraph 1558 as a non-enumerated manufactured article is untenable.

For the reasons stated, we hold that the merchandise involved herein was properly assessed with duty by the collector as earthy or mineral substances, wholly or partly manufactured, not decorated, at 15 per centum ad valorem under paragraph 214 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802. The protest is overruled and judgment will be rendered for the defendant.